**Arlene MORRIS, Appellant,**

v.

**D. Holeman MORRIS et al., Appellees.**

Court of Appeals of Kentucky.

May 25, 1956.

Rehearing Denied Sept. 21, 1956.

Nichols & Nichols, Earle M. Nichols, Madisonville, for appellant.

Franklin & Franklin, Madisonville, for appellee.

MOREMEN, Judge.

Appellant, Arlene Morris, is the widow of William L. Morris who died possessed of real estate which was later sold. She elected to receive the present cash value of her dower right in lieu of income for the remainder of her life. The problem on this appeal lies in the selection of the proper method for calculating that present cash value.

244

The trial court adopted the long accepted practice of using the Wigglesworth Table of Mortality to determine the life expectancy and to obtain the factor which was representative of the present value of the estate. In doing so, he accepted a criterion established in 1868 where, in Alexander's Ex'x v. Bradley, 66 Ky. 667, the Wigglesworth Tables were approved, and the Tables were published in the forepart of that same volume.

Since the time of the Alexander case the right to use standard tables of mortality has been unquestioned, even though the courts have been slow in accepting other standard tables of scientific calculations. It is suggested in Wigmore on Evidence, Vol. 6, page 15, that this exception to the hearsay rule was demanded by custom and practical convenience with the result that the judicial mind relented. In fact, the general use of mortality tables has reached such a degree of acceptance that the courts may judicially notice them. 20 Am.Jur., Evidence, § 99; Chicago Veneer Co. v. Jones, 143 Ky. 21, 135 S.W. 430.

We believe, however, that another basis for the use of these catalogues of statistics may result from the law's continuous attempt to obtain the best evidence.

We know as a practical matter that no person lives or dies according to the pattern of a statistical table but in order to find a rule which, over a period of years and in a great number of cases, will more closely conform to the standards of justice, the adoption of a mortality table has been believed to be the best method of reaching general justice for all even though, occasionally and individually, an injustice is done. But if the initial acceptance of this table was had because of the desire to obtain the best evidence of the common experience of mankind, then it is equally incumbent upon the courts to seek and obtain those mortality tables that best reflect that experience.

In the beginning and in the infancy of such tables, the Wigglesworth Mortality Table and the Carlisle experience were used because they were perhaps the only ones of that nature based upon an actual study of man's span of life even though the research was limited to a small locale.

It was pointed out in Illinois Cent. R. Co. v. Houchins, 1905, 121 Ky. 526, 89 S.W. 530, 1 L.R.A.,N.S., 375, 28 Ky.Law.Rep. 499, that the Wigglesworth Tables were made before the year 1858 and that since then there had been a great advance not only in medical science but in the collection of data upon which such tables are computed. It was suggested in that opinion that the courts, as information increased, should use the table which is best and most reliable.

We agree with the trial court that the Wigglesworth Table has been used for many years and has been generally accepted by the bench and bar of this state as being a fair means of according justice. But we are of opinion that a greater degree of accuracy in such determination may result from the use of tables which reflect not only a broader experience as to area but also a greater number of subjects considered in the compilation of the schedule, such as U. S. Life Tables on file in the National Office of Vital Statistics, Bureau of State Services, Public Health Services, Department of Health, Education and Welfare of the United States of America, Washington, D. C. These tables are published for the years 1939–41 in the 1955 edition of the Kentucky Revised Statutes.

In the case at bar appellant filed with its complaint the latest edition by said department which is designated as U. S. Life Tables, 1949–51. It is indicated in the preface to the tables that they are prepared at ten year intervals and:

"The life tables in this report are based on the 1950 census of population and deaths of the 3-year period 1949–51 for the entire continental United States. In deriving life table values at ages under 5, use was made, also, of reported births for each 8 years 1944 to 1951, and deaths for the same years. Nine detailed life tables are contained in this report. Life Tables are given for whites and nonwhites, separately by

sex, and for both sexes combined, and also for the total population and for total males and total females."

■ We think that we may fairly judicially note the federal government's preoccupation with the collection of statistics concerning all vital matters, not only mortality but also those pertaining to such subjects as agriculture, mining, cost of living, et cetera, and we also recognize the general acceptance by all people of the thorough and workmanlike job which has been done over a long period of years by the various federal agencies to such an extent that many wage contracts have geared the rise and fall of wages and salaries to the rise and fall of the cost of living indices. We know of no more accurate measurement.

To demonstrate the difference between the various tables when applied to the facts of the instant case, under the U. S. Life Table, 1949–51, the widow, who is 42 years of age, has a life expectancy of 34.17 years; while under the Carlisle Table, the life expectancy at the age of 42 is 26.34 years; and under the Wigglesworth Table, 25.19 years. The variation is even greater during the younger and older ages.

It may be noted that various tables of mortality, as set forth in the latest edition of the Kentucky Revised Statutes, employ various rates of interest in fixing the factors of return. The American Experience Table of Mortality uses a 5% rate. The Wigglesworth and Carlisle Tables of Mortality use a 6% rate, while the U. S. Life Table, as reported in the 1955 edition of the Kentucky Revised Statutes, gives a choice of 2%, 2½%, 3% and 4%. These rates of interest are predicated, of course, upon the prevailing rate of interest at the time. We know that when money is "tight" the interest rate is larger; when money is plentiful, the value of its use declines. At the time the Wigglesworth Table was created, 6% might well have been not only reasonable, but the maximum which could have been made.

The whole principle is based on the idea of what the rate would have been if one-third of the purchase price of decedent's property had been invested by a fiduciary and the interest derived from that investment paid to appellant.

■ KRS 386.020 defines the investment area for fiduciaries holding funds for loans, and all the items listed properly fall within the classification of conservative risks, such as government bonds, notes and bonds secured by mortgages that the Federal Housing Administrator has insured, and other securities of similar type. We think, therefore, that under present conditions a 4% maximum rate more nearly reflects the condition of the present money market. This, of course, may change. More accurate mortality tables may be developed. We are now of opinion that the time has come to discard the older tables and obtain the best ones extant. We believe that such tables are the U. S. Life Tables which, as we have stated, are on file in the National Office of Vital Statistics, Bureau of State Services, Public Health Services, Department of Health, Education and Welfare of the United States of America, Washington, D. C. We have indicated in this opinion that there is a later table than those published for the years 1939–41, and if the actuarial tables which are used in connection with the life expectancy tables were more readily available, we would commend the use of the 1949–51 tables. However, we recognize the fact that the actuarial computations must be made by skilled mathematicians and until these factors are calculated and readily available to the bench and bar, we must rely upon the U. S. Life Tables and interest schedules for the years 1939–41 as published in the latest edition of the Kentucky Revised Statutes. When the statute reviser obtains later schedules with complete computations, and issues them by means of a supplement to the statutes, such later tables, of course, would be the best evidence obtainable and, therefore, should be substituted for the 1939–41 tables.

The judgment is therefore reversed and the case remanded for proceedings consistent with this opinion.