C. P. MOORE, Jr., etc., and Muriel Ward Moore, etc., Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 3861.

United States District Court
W. D. Kentucky,
at Louisville.

Jan. 14, 1963.

S. Russell Smith, Smith & Smith, John:
A. Fulton, Woodward, Hobson & Ful-
ton, Louisville, Ky., E. E. Hubbard, Ful-
ton & Hubbard, Bardstown, Ky., for
plaintiffs.

Robert Sama, Melvyn I. Mark, Attys.,.
Dept. of Justice, Washington, D. C., Wm.
E. Scent, U. S. Atty., Louisville, Ky., for
defendant.

SHELBOURNE, District Judge.

This is a suit for the refund of Fed-
eral estate taxes imposed upon the es-
tate of C. P. Moore, Sr.

The Administrator paid $78,587.42 in
estate taxes on September 7, 1955 and
an additional assessment of $1,082.48 in
estate taxes on April 12, 1956. Interest
on that additional assessment, amount-
ing to $18.55, was paid by the Adminis-
trator on May 21, 1956. Subsequently,.
on February 6, 1958 the Administrator
filed a refund claim for the recovery of
$15,883.07 of the amounts so paid, with
statutory interest thereon. This refund
claim was denied on January 29, 1959,
and the complaint in this action was filed
on October 15, 1959.

The substantial facts are not in dis-
pute. The only question to be deter-
mined is whether or not the $55,000.00
which Muriel Moore, the widow of C. P.
Moore, Sr., received outright and in cash
pursuant to an out-of-court compromise
and settlement of the claim which she
asserted through her counsel to the fair
value of her dower interest in her hus-
band's Kentucky real estate is a termin-

able interest and thus does not qualify for the marital deduction under § 2056 of the Internal Revenue Code of 1954.

### FINDINGS OF FACT

1. C. P. Moore, Sr. died intestate on September 30, 1954, a resident of Bardstown, Nelson County, Kentucky. He was survived by his third wife, Muriel, nine children by his second marriage and one daughter by Muriel. He was seventy-four years of age at the time of his death. His widow was fifty-four. The nine children by his second wife ranged in age from thirty-two to forty-seven. Anne, his daughter by Muriel, was twenty-five.

2. C. P. Moore, Jr., one of the decedent's children by his second marriage, was appointed Administrator of his father's estate by order of the Nelson County Court on October 8, 1954 and duly qualified as such. He and Muriel Moore are the plaintiffs in this action.

3. At the time of C. P. Moore, Jr.'s appointment as Administrator of his father's estate, the Nelson County Court appointed S. R. Demaree and T. B. Nichols, licensed real estate brokers, and Joseph F. Downs, to appraise the property owned by the decedent at the time of his death. Their appraisal, including land, was made on October 12, 1954 and the Administrator adopted it as his inventory of C. P. Moore, Sr.'s estate. That appraisal has been accepted, with minor adjustments, for estate tax purposes. There is no dispute in this proceeding as to the value of any property owned by the decedent for estate tax purposes.

4. The taxable estate of C. P. Moore, Sr. consisted of the following:

| Real Estate | | |
|---|---|---|
| Colorado real estate | $ 21,750.00 | |
| Kentucky real estate | 287,267.46 | |
| Total real estate | | $309,017.46 |
| **Probate Estate (Personalty)** | | |
| Cash in bank | 92,318.96 | |
| Stock in Farmers Bank and Trust Co. | 65,100.00 | |
| Other stocks | 99.54 | |
| Farm machinery, cattle and crops | 5,168.68 | |
| Automobiles and personal effects | 5,542.66 | |
| Other personal property | 1,873.71 | |
| Total probate estate (personalty) | | 170,103.55 |
| **Other Inclusions in Taxable Estate** | | |
| Insurance policies payable to widow | 5,274.56 | |
| Jointly-owned property | 1,068.90 | |
| Total of other inclusions | | 6,343.46 |
| Total Gross Estate | | 485,464.47 |
| **Deductions** | | |
| Funeral expenses | 2,895.50 | |
| Administration expenses | 14,220.63 | |
| Debts | 17,049.52 | |
| Total Debts, Funeral and Administration Expenses | | 34,165.65 |
| Adjusted Gross Estate | | $451,298.82 |

5. The Government calculated and determined the marital deduction to which the estate of C. P. Moore, Sr. was entitled as follows:

| | | |
|---|---|---|
| Widow's exemption | $ 1,500.00 | |
| Life insurance | 5,274.56 | |
| One-half interest in Colorado real estate | 10,875.00 | |
| One-half interest in surplus personal property | 67,300.90 | |
| Total in fee to surviving spouse | | $ 84,950.46 |
| Less inheritance and estate taxes payable therefrom | | 5,769.36 |
| Net marital deduction | | $ 79,181.10 |

———————————◆———————————

6. There is no dispute as to the propriety of the inclusion in the marital deduction of the items hereinabove set forth.

7. The plaintiffs take exception to the inclusiveness of the marital deduction as calculated and determined by the Government. They claim that the $55,000.00 paid to Muriel Moore under the circumstances hereinafter set forth in settlement and compromise of her dower interest in the $287,267.46 of Kentucky real estate owned by her husband properly qualifies for the marital deduction and should have been included therein.

8. C. P. Moore, Sr. at the time of his death owned the fee simple title to ten parcels of real estate located in Kentucky, having an aggregate estate tax value of $287,267.46. These ten parcels were:

(a) The Old Talbott Tavern, a twenty-four room hotel in Bardstown which was under lease to May 20, 1959 with a tenant's option to renew for an additional five years;

(b) Three large rooming houses in Bardstown, one of which was under lease to June 1, 1955;

(c) Three garage buildings, one in Bardstown, another in LaGrange and the third in Lawrenceburg, the latter being under lease to February 28, 1958;

(d) A contiguous series of store buildings and apartments in Bardstown, part of which was under lease to June 30, 1958, part to February 1, 1961 and the remainder upon month-to-month occupancy.

(e) Two farms in Nelson County, one containing 233 acres and the other 384 acres, both of which were under tenant's contracts expiring January 1, 1955.

9. No action was instituted by the ten heirs of C. P. Moore, Sr. or anyone else in the Nelson Circuit or County Court under KRS 381.135 to have dower proper (a life interest) in one-third of the decedent's Kentucky real estate laid off, allotted and deeded in kind to Muriel Moore by Court Commissioners as provided in that statute or to otherwise have that Kentucky real estate partitioned and divided between the widow and the ten children of C. P. Moore, Sr.

10. The Government in this action stipulated in open court, and the Court finds, that the Kentucky real estate owned by C. P. Moore, Sr., at the time of his death was indivisible. It could not be partitioned in any manner (by individual parcels, parts of same or combinations thereof) between C. P. Moore's widow and his heirs without materially impairing its value or the value of the interest of the respective parties therein.

11. No action was instituted in the Nelson Circuit Court by Muriel Moore under KRS 389.020 and KRS 389.050 to have C. P. Moore, Sr.'s Kentucky real estate sold by court order because of its indivisibility and to obtain out of the

proceeds of such sale a "reasonable compensation" for the value of her contingent dower interest therein for the reason that the compromise and settlement agreement she and the ten heirs entered into on April 23, 1955 obviated the necessity for such a judicial proceeding.

12. On April 23, 1955 Muriel Moore and the ten heirs of C. P. Moore entered into a formal written contract in which they "agreed with each other that the reasonable, fair, cash value of the dower interest of third party [Muriel Moore] in and to the hereinafter described [Kentucky] real estate is the sum of . . . ($55,000.00)." This agreement contained an acknowledgment by all of the parties to it that the ten children of C. P. Moore, Sr. were "the owners of the fee simple title to * * * the real estate owned by C. P. Moore, Sr., at the time of his death and located in the State of Kentucky, subject to the dower interest of third party, widow of C. P. Moore, Sr." It provided that those ten heirs would pay Muriel Moore the $55,000.00 agreed upon as the fair cash value of her dower interest in the form of a three-year promissory note bearing interest at the rate of 5% per annum, which note would be secured by a mortgage to be executed by the ten heirs on three parcels of that Kentucky real estate having an aggregate estate tax value of $106,795.56. Muriel Moore, in consideration thereof, released and relinquished to the ten heirs "all of her right, title and interest, including her dower interest," in the Kentucky real estate owned by her husband and agreed to execute a deed to this effect.

13. The April 23, 1955 agreement between Muriel Moore and the ten children of C. P. Moore, Sr. was negotiated in good faith and at arms' length between persons having adverse and conflicting interests who were *sui juris* and represented by counsel. The parties thereto were not consciously endeavoring to minimize, avoid or evade estate taxes in negotiating that agreement. Their purpose was to avoid costly litigation with respect to the value of Muriel Moore's dower interest and a forced sale of the real estate owned by C. P. Moore, Sr. by compromising and settling a claim asserted in good faith by Muriel Moore with respect thereto. The claim that Muriel Moore asserted through her counsel was the right under KRS 389.020 and KRS 389.050 of a widow to receive and be paid outright and in cash the fair value of her dower interest in the indivisible Kentucky real estate of her husband in lieu of an allotment in kind of dower proper (a life interest) in one-third of that real estate. The agreement of April 23, 1955 recognized the claim so asserted by Muriel Moore and the status which justified her in asserting it. That agreement satisfied, by way of compromise and settlement, the statutory right of Muriel Moore to receive "reasonable compensation" for her "contingent right of dower" in the indivisible Kentucky real estate of C. P. Moore, Sr.

(a) In November of 1954 Muriel Moore employed and retained Mr. Elmer E. Hubbard, a practicing attorney in Bardstown, Kentucky, to represent her and to obtain for her whatever interest she lawfully and legally might have in the estate of her deceased husband. The scope of Mr. Hubbard's employment included the institution of legal proceedings, if he deemed such necessary.

(b) On November 16, 1954 Mr. Hubbard notified C. P. Moore, Jr., the Administrator and one of the decedent's heirs, by letter that he had been retained to represent Muriel Moore "in connection with the settlement of the estate of C. P. Moore, Sr. and with reference to the real estate owned by Mr. Moore at his death." A copy of this letter was sent to Mr. J. Smith Barlow, also a practicing attorney in Bardstown, who previously had been retained as attorney for the Administrator.

(c) Thereafter, the ten children and heirs of C. P. Moore, Sr. (including Anne, the daughter of Muriel) appointed three of their number (James R. Moore, C. Fred Moore and C. P. Moore, Jr., children of Mr. Moore, Sr. by his second wife and stepsons of Muriel Moore) as

their agents for the purpose of dealing with Muriel in connection with the real estate owned by C. P. Moore, Sr. and other matters as to which the Administrator of C. P. Moore's estate had no authority.

(d) Between November 16, 1954 and April 23, 1955 extended discussions and negotiations with respect to Muriel Moore's dower interest in the Kentucky real estate of her husband took place between Mr. Hubbard, the three heirs duly appointed to act as agents for all ten heirs of C. P. Moore, Sr., the Administrator of C. P. Moore, Sr.'s estate, and J. Smith Barlow, the attorney for the Administrator of that estate.

(e) Mr. Hubbard asserted a claim on behalf of Muriel Moore under KRS 389.-020 and KRS 389.050 to the fair cash value of her dower interest in her husband's Kentucky real estate, inasmuch as the same could not be divided without materially impairing its value or the value of his client's interest therein. Using the appraised values of that Kentucky real estate, a 6% interest factor and the life expectancy and dower tables then in the Kentucky Revised Statutes as guides, Mr. Hubbard initially claimed that $65,000.00 would be "reasonable compensation" to Muriel Moore for her "contingent right to dower" under the statute.

(f) The three heirs who were acting as agents for all of the heirs of C. P. Moore, Sr. consulted frequently with Mr. Barlow, their attorney, with respect to the claims and demands asserted by Mr. Hubbard. They disputed the use of a 6% interest factor by Mr. Hubbard in determining the fair cash value of the widow's dower interest in that Kentucky real estate, claiming that an interest factor of 4% properly should be used.

(g) Several times during the progress of these negotiations Mr. Hubbard threatened to institute proceedings in the Nelson Circuit Court under KRS 389.020 and KRS 389.050 to have all of the Kentucky real estate of C. P. Moore, Sr. sold by Court Commissioners as therein provided for, in order to have the fair cash value of the widow's dower interest judicially determined and awarded to her.

(h) The Administrator and the three agent-heirs were conscious of the fact that, if such a proceeding were instituted on behalf of Muriel Moore, it would be a costly one and all of the real estate which had descended to them from their father might be sold at a forced sale ordered by the court. They desired to avoid such a forced sale and the costs incident thereto if a reasonable compromise and settlement with Muriel Moore could be reached.

(i) Muriel Moore, in asserting her statutory right to cash in lieu of dower proper, and the heirs of C. P. Moore, Sr. (one of whom was the Administrator of his estate) in compromising and settling her claim therefor, were not consciously attempting to minimize, avoid or evade Federal estate taxes that otherwise might be due and payable. All of them were endeavoring to adjust and settle Muriel Moore's substantive rights under Kentucky law with respect to the Kentucky real estate owned by C. P. Moore, Sr., without regard to the tax impact or effect of such a compromise and settlement.

(j) Finally, a compromise was effected. The value of Muriel Moore's dower interest was determined, in principle, on the basis of the appraised value of the Kentucky real estate by using a 5% interest factor and a modified life expectancy and dower table. This resulted in a figure of approximately $55,000.-00, which was agreed upon by all interested parties as being the fair value of and "reasonable compensation" for Muriel Moore's "contingent right to dower" in the Kentucky real estate of her deceased husband. After the terms of payment and other matters were resolved, the substance of this compromise and settlement were embodied in the written contract of April 23, 1955 between Muriel Moore and the ten heirs of C. P. Moore, Sr.

(k) Mr. Barlow, attorney for the Administrator and heirs, prepared the compromise and settlement agreement of

April 23, 1955 and the deed, promissory note and mortgage which that agreement required the various parties to execute. Mr. Hubbard, attorney for the widow, reviewed all of these documents before they were executed.

(*l*) On May 19, 1955 the transaction between Muriel Moore and the ten heirs was consummated. A deed in which she quitclaimed and conveyed to the ten heirs "all of [her] right, title and interest including her dower interest" in her husband's Kentucky real estate was delivered and recorded. Simultaneously, the $55,000.00 three-year interest-bearing note called for by the April 23, 1955 agreement was delivered to her along with a mortgage on three of the parcels of Kentucky real estate having an estate tax value of $106,795.56.

(m) Between May 19, 1955 and November 2, 1955 the heirs of C. P. Moore, Sr. sold five of the ten parcels of Kentucky real estate that descended to them from their father. They realized a net of $119,667.46 (the final estate tax values as adjusted) from these sales, all of which was deposited in a special bank account entitled "C. P. Moore, Sr. Heirs Real Estate Account." The heirs then transferred $61,000.00 from this account to the Administrator "for the purpose of providing him with liquid funds with which to pay their share of Federal Estate Taxes and Kentucky Inheritance Taxes, in order that the administrator would not have to sell the stock in the Farmers Bank and Trust Co.," which fact was duly recorded by the Administrator in the periodic settlements he filed in the Nelson County Court. Out of the remaining balance of $58,667.46 in this special account, the heirs paid the $55,000.00 note given by them to Muriel Moore, together with $972.72 in interest thereon, in three installments—one of $30,581.25 on September 1, 1955, another amounting to $7,500.00 on October 17, 1955 and the remaining principal balance of $16,918.75 plus $972.72 in interest on November 2, 1955.

14. Had Muriel Moore instituted legal proceedings under KRS 389.020 and KRS 389.050 to obtain the fair value of her dower interest outright and in cash and been successful in the prosecution thereof, instead of compromising and settling her right thereto, a judgment would have been entered ordering the admittedly indivisible Kentucky real estate of C. P. Moore, Sr. sold by officers of the court free of her right to dower therein. This order of sale, by virtue of the specific provisions of KRS 389.050, would have had to contain a provision awarding Muriel Moore "a reasonable compensation * * * out of the proceeds of said sale" for her "contingent right to dower" in the land ordered to be sold.

15. The $55,000.00 which Muriel Moore received outright and in cash under and pursuant to the compromise and settlement agreement of April 23, 1955 represents the fair value of her dower interest and "a reasonable compensation" to her for her "contingent right to dower" in the admittedly indivisible Kentucky real estate of her deceased husband within the meaning of KRS 389.050.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction of this action and of the parties thereto. Title 28, Section 1346(a) (1), United States Code.

2. The Kentucky real estate of a person who dies intestate descends immediately to and vests in those who are his heirs under the statutes of descent and distribution of Kentucky, subject to his widow's *right of dower* therein. The heirs own that real estate. The widow's *right of dower* therein is a right "resting in action only." Shield's Heirs v. Batts (1830), 5 J.J.Marsh. (28 Ky.) 12. She has no power or right to convey or assign her dower to a third party before it is allotted to her, and if she attempts to do so no interest passes to the grantee under the deed. Burk v. Moore (1925), 209 Ky. 24, 272 S.W. 38; Hurt's Guardian v. Crawford Coal Corporation (1928), 222 Ky. 504, 1 S.W.2d 955. Even a simple lease executed by her will be invalid. Commonwealth v. Geary (1953)

Ky., 254 S.W.2d 477. And if that lease is one in which she purports to lease or transfer the oil underlying the land, she is guilty of waste. Lemaster v. Hudson (1926), 214 Ky. 467, 283 S.W. 439. The only power or right a widow has with respect to her dowable interest in real estate prior to the allotment and assignment to her of dower proper therein is to release her *right of dower* to the owner of the fee, an heir or other party in privity with the decedent. Consolidation Coal Co. v. Grayson (1919), 186 Ky. 314, 216 S.W. 848; Preston v. Second Nat. Bank (1933), 250 Ky. 673, 63 S.W. 2d 774.

■ 3. A widow's *right of dower* under the Kentucky statutes is dualistic. Precisely what she is entitled to receive depends upon whether the real estate of her husband can be divided and partitioned in kind between her and the heirs without materially impairing its value or the value of her interest in it.

(a) If the deceased husband's real estate can be partitioned and divided, such must be done. This requires an admeasurement of all the land of the decedent, a physical "laying off" or allotment and division thereof, and an assignment to the widow of a life interest in one-third of it by deed of conveyance. KRS 392.020; KRS 381.135. "The wife or husband has no estate in the lands of the deceased spouse until dower or curtesy has been admeasured and assigned * * *" Beach v. Hopperton's Ex'r (1946), 303 Ky. 272, 196 S.W.2d 894. Until that is done a widow is entitled to one-third of the *gross* rents and profits from all of her husband's dowable real estate. This serves "as a whip to compel the heir to bestir himself and arrange that her dower be assigned to her at the earliest possible moment." Wyly v. Kallenbach (1934), 256 Ky. 391, 76 S.W.2d 34. The heirs (or the widow, if the heirs do not "bestir" themselves) can proceed under KRS 381.135 by filing an action in either the circuit or the county court of the county in which the land is located to have dower admeasured,

allotted and assigned to the widow. In such an action, three court-appointed Commissioners will make the allotment and, upon confirmation of their report by the court, a specially appointed Court Commissioner "shall, by deed, convey to each party the land allotted to him."

(b) If the real estate of the deceased husband "cannot be divided without materially impairing its value or the value of the [widow's] interest therein," the widow has a right to have that real estate sold free of her "contingent right to dower" and to obtain "a reasonable compensation * * * out of the proceeds of said sale" for her right of dower. KRS 389.050. The Kentucky Revised Statutes contain a "Life Expectancy and Annuity Table," an example showing a "Dower Computation When Will Renounced," and "Alternate Tables for Valuing Life Estates" to assist courts and individuals in determining what constitutes "reasonable compensation" to a widow in cash for the value of her dower interest in her husband's real estate if it is indivisible. These tables are an authoritative guide in determining the present cash value of a widow's right of dower in indivisible real estate. Morris v. Morris (1956) Ky., 293 S.W.2d 243. Procedurally speaking, a widow may obtain the fair value in cash of her right of dower in the indivisible real estate of her husband by filing an equitable action in the circuit court under KRS 389.020(1) to have that real estate sold by order of court free of her right to dower therein. Upon the entry of such an order of sale, or the moment an order is entered fixing the present cash value of her right to dower, the right to receive cash in lieu of dower proper in that real estate vests in the widow. It will survive her death, even though the land has not been sold and she has not actually received the cash. Beach v. Hopperton's Ex'r (1946), 303 Ky. 272, 196 S.W.2d 894.

4. These conclusions and principles of Kentucky law were recognized and are implicit in Dougherty v. United States, 292 F.2d 331 (6 Cir., 1961). The

parties to this action acknowledge the controlling effect upon this Court of the Dougherty case. There the Sixth Circuit, under circumstances substantially identical to those here, held that

" * * * fixing the value of the decedent's real estate by stipulation of the parties, instead of through a sale by the Court Commissioner, was not such a deviation from the provisions of the statute as to prevent treating the sum of money which the widow eventually received as her statutory interest in lieu of dower * * * "

once the "essential requirements" of joint ownership and indivisibility of that real estate were established. Those two "essential requirements" have been satisfied in this action. The joint ownership of C. P. Moore, Sr.'s Kentucky real estate, as required by KRS 389.020(1) (c), unquestionably exists here. The indivisibility of that real estate between his heirs and his widow, as required by the same statute, also exists here. The Government stipulated that it was indivisible, and the heirs admitted its indivisibility when they signed the compromise and settlement agreement of April 23, 1955.

■ The rationale of the Dougherty case is clear and unmistakable. The marital deduction provisions of the Internal Revenue Code are to be "liberally construed and applied to the purposes of their enactment." The primary purpose of that deduction was "to extend to married taxpayers in common law states the advantages of residents of community property jurisdictions by permitting a surviving spouse to acquire, free from estate tax exaction, one-half of what is referred to as the adjusted gross estate of the deceased spouse." The terminable interest concept "was devised for the purpose of assuring that if the property bequeathed to the spouse was to be excluded from the gross estate of the decedent, it would be adequately integrated in the spouse's estate so that on her death, it would not escape the death tax

a second time." The Sixth Circuit then stated this to be the guiding principle:

"Under this construction of the Act, we are more concerned with what the widow actually received in the settlement of her husband's estate than with what she was technically entitled to receive but actually did not receive. The transaction is materially different from an allotment of dower in the settlement of the estate and a subsequent sale by her of such allotment."

■ This Court concludes that the Dougherty case and its rationale govern the instant case. Upon the death of C. P. Moore, Sr. his widow acquired a statutory right under Kentucky law to receive outright and in cash the value of her dower right in his Kentucky real estate, in lieu of an allotment of dower proper and in kind. This was a "statutory interest in lieu" of dower which passed to her as the surviving spouse of C. P. Moore, Sr., within the meaning of Section 2056(e) (3) of the Internal Revenue Code. Never at any time did dower proper—a terminable life interest in one-third of her husband's Kentucky real estate—pass to or vest in her. The $55,000.00 in cash she "actually received in settlement of her husband's estate" and in satisfaction of her statutory right to cash in lieu of dower proper has been adequately and fully "integrated" into her taxable estate. Upon her death, it will not escape the death tax a second time, any more than will the half-interest she received outright in her husband's Colorado real property by virtue of the community property laws of that state. The cash so received by her qualifies for the marital deduction under Section 2056 (a) of the Internal Revenue Code.

5. The Government seeks to draw a distinction between this action and the Dougherty case on the ground that here no legal proceeding whatever was filed in the state court by the widow to obtain the fair cash value of her dower right, whereas in the Dougherty case such a proceeding was instituted by the widow

but was compromised and settled by stipulation after an order of sale was entered but before the real estate could be sold.

Such a distinction is too formal for substance. A similar one was sought to be made by the Government in Lyeth v. Hoey, 305 U.S. 188, 59 S.Ct. 155, 83 L. Ed. 119, where an heir contested the will of his ancestor but received cash in settlement and satisfaction of his right to contest and inherit. The question was whether he received that cash by "inheritance," in which event it would be exempt from income tax, or by virtue of the contract of settlement. The Supreme Court held that the cash was acquired by inheritance and thus was exempt from income tax. In so doing it laid down this rule:

> " * * * It does not seem to be questioned that if the contest had been fought to a finish and petitioner had succeeded, the property which he would have received would have been exempt under the federal act. Nor is it questioned that if in any appropriate proceeding, instituted by him as heir, he had recovered judgment for a part of the estate, that part would have been acquired by inheritance within the meaning of the act. We think that the distinction sought to be made between acquisition through such a judgment and acquisition by a compromise agreement in lieu of such a judgment is too formal to be sound, as it disregards the substance of the statutory exemption. It does so, because it disregards the heirship which underlay the compromise, the status which commanded that agreement and was recognized by it. * * *"

The assertion in good faith of a claim based upon a statute, arms-length negotiations between the parties who are *sui juris* and represented by counsel, a recognition of the statutory right that underlies the claim as well as the status which enables the claimant to assert it, and a satisfaction of that statutory right by way of a bona fide compromise and settlement are the equivalent of full-blown legal proceedings and a judicial determination of the right of the claimant thereto. It has been so held insofar as the allowability of the marital deduction is concerned, even though no legal proceedings whatever were instituted by the surviving spouse. Barrett v. Commissioner, 22 T.C. 606 (1954). Cf. Dutcher v. Commissioner, 34 T.C. 918 (1960).

■ The issue in this case is whether a "statutory interest in lieu" of dower proper passed to C. P. Moore, Sr.'s widow, and if so whether that statutory interest is a terminable or a nonterminable one. In determining whether an interest or right given to a widow by state statute qualifies for the marital deduction, the *existence* of that interest or right is the *sine qua non*. Invoking the proper legal procedures to enforce that *right* or to *obtain* that interest is not a contingency or a condition precedent to its existence. Rensenhouse v. Commissioner, 31 T.C. 818 (1959); Gale v. Commissioner, 35 T.C. 215 (1960); Landers v. Commissioner, 38 T.C. No. 83 (1962); United States v. The First National Bank and Trust Company of Augusta, 279 F.2d 313 (5 Cir., 1961).

6. The collection by the defendant of the $15,695.11 in estate taxes attributable to the disallowance of the marital deduction with respect to the $55,000.00 in cash received by Muriel Moore in lieu of her dower right in the Kentucky real estate of her deceased husband was wrongful and the plaintiffs are entitled to recover said sum, with interest thereon as provided by law.

7. An appropriate judgment in accordance with the conclusions expressed herein will be submitted by counsel for the plaintiffs on notice, in accordance with the rules of this Court.