James Elster POLLEY,
Appellant/Cross–
Appellee,

v.

Leean Louella ALLEN, Appellee/Cross–
Appellant.

Nos. 2002–CA–001318–MR,
2002–CA–001348–MR.

Court of Appeals of Kentucky.

April 2, 2004.

**224**

Agnes Sipple Trujillo, Pikeville, KY, for appellant/cross-appellee.

Kathryn Burke, Pikeville, KY, for appellee/cross-appellant.

Before COMBS, DYCHE, and KNOPF, Judges.

### OPINION

KNOPF, Judge.

James Elster Polley and Leean Louella Allen respectively appeal and cross-appeal from findings of fact, conclusions of law and a judgment resolving issues of child support and custody, and division of marital property and debt in their dissolution action. We agree with James that the trial court improperly took judicial notice of occupational statistics concerning his earning capacity. Therefore, we reverse the trial court's award of child support and remand for further findings and a new calculation of child support based upon James's income and earning capacity. In all other respects, we affirm the judgment of the Pike Circuit Court.

James and Leean were married in 1987, and two children were born of the marriage. On February 28, 2000, Leean filed a petition to dissolve the marriage. The court granted temporary custody of the two children to Leean, and granted James visitation with the children, subject to certain restrictions. The trial court entered a decree of dissolution on November 3, 2000, reserving for later adjudication the issues of child custody, support and visitation, and division of marital property and debt.

The court assigned Leean's pending motions to a domestic relations commissioner (DRC), who, following a hearing, issued findings and recommendations on the pending motions. Among other things, the DRC concluded that James was underemployed, and imputed income to him accordingly. Both parties filed objections to the DRC's report.

Ultimately, the trial court conducted several hearings on the disputed issues, and on January 9, 2002, issued findings of fact, conclusions of law and judgment resolving the remaining issues. In relevant part, the court awarded custody of the children to Leean. However, the court expressed concerns about James's prior conduct around the children. The court also noted that James had failed to submit a visitation plan as previously directed. Consequently, the court limited his visitation to every other Thursday from 4:30 p.m. to 8:00 p.m. and every other Saturday from 10:00 a.m. to 8:00 p.m.

In addition, the court directed that James's parents have visitation with the children once every three months. The court also concluded that James was underemployed, and after imputing potential income to him, ordered him to pay child support in the amount of $723.50 per month.

On the issues of marital property and debt, the court first concluded that the parties' residence was marital and awarded it to Leean, along with the mortgages and property-tax liens against the proper-

ty. The court found to be non-marital three gas wells and a gas line owned by partnerships in which James has an interest. However, the court characterized the back property taxes owed on the wells as marital "because the royalties on these wells were used to purchase items for marital purposes", but assigned the debt entirely to James.

Both James and Leean filed motions to alter or amend the findings of fact and conclusions of law. On May 23, 2002, the trial court issued amended findings. The court did not alter its finding that James was underemployed, but explained that it had taken judicial notice of occupational statistics offered by Leean concerning his earning capacity. The court also slightly modified its division of the marital personalty. This appeal and cross-appeal followed.

James first argues that the trial court improperly gave judicial notice to occupational statistics in finding that he is underemployed. At the hearing before the DRC, Leean's counsel offered statistics from the United States Department of Labor, Bureau of Labor Statistics. Her counsel did not state that these statistics came from a web-site or from any printed material. Leean testified at a later hearing that she obtained these statistics from the agency's web-site. However, Leean did not introduce a printed copy of these statistics into the record.[1] On both occasions, Leean and her counsel stated that, according to these national statistics, an individual who has a CPA and who is a senior accountant typically earns between $34,750.00 to $51.000.00 per year, manag-

ers with similar qualifications earn between $41,750.00 and $68,500.00 per year, and directors of accounting and auditing earn $56,000.00 to $91,000.00 per year. In its initial judgment the trial court found that James is underemployed and capable of earning $34,750.00 per year ($2,895.33 per month) as an accountant—the lowest income set by the statistics. The court also noted that James had an average annual income of $19,542.33 from gas wells, bringing his imputed and actual income to $4,524.36 per month. The court calculated his child-support obligation based upon this amount. In its amended findings of fact, the trial court stated that it had taken judicial notice of the occupational statistics offered by Leean.

■ James contends that these statistics were not properly subject to judicial notice. He notes that Leean obtained this information from the internet, but failed to establish the source, accuracy and reliability of the statistics. He also asserts that Leean essentially offered vocational testimony although she was not qualified as an expert in that field. James further argues that national statistics concerning the range of income were not relevant in determining his earning capacity. Under the circumstances, we agree with James that the trial court erred by accepting the statistics through judicial notice.

Kentucky Rule of Evidence (KRE) 201 permits a court to take judicial notice of adjudicative facts. "A judicially noticed fact must be one not subject to reasonable dispute in that it is either: (1) Generally known within the county from which the

1. In her brief in this appeal, Leean neither confirms nor denies that she found the statistical information on the internet. Likewise, the trial court in its amended findings stated that it found the statistics to be authoritative, but it did not identify the specific publication in which the information appeared. James

suggests that the information came from *http://www.bls.gov*—a web-site operated by the United States Department of Labor, Bureau of Labor Statistics. Among other things, this site contains detailed occupational-wage statistics, broken down nationally, regionally, and by state.

jurors are drawn, or, in a nonjury matter, the county in which the venue of the action is fixed; or (2) Capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." The purpose of judicial notice is to "eliminate the need for formal proof of facts that are beyond the scope of reasonable and legitimate dispute." [2]

■■ Leean argues that the trial court could properly take notice of statistics which were collected and maintained by the federal government.[3] We agree. A court may properly take judicial notice of public records and government documents, including public records and government documents available from reliable sources on the internet.[4] In this case, however, Leean did not lay a foundation to demonstrate the accuracy and reliability of the statistical information. While Leean asserts that the statistics came from the United States Department of Labor, Bureau of Labor Statistics, she did not identify the uniform resource locator (url) of the website on which they were published. Because the source of the information was not specifically identified, we cannot determine if it was "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." [5] Consequently, we find that the trial court erred by giving judicial notice to this information.

Moreover, even if the trial court could properly take judicial notice of such information, the weight to be given to such evidence depends on the context of the proceeding. In the present case, Leean introduced the statistical data to establish that James is underemployed for purposes of determining child support. But under our statutory scheme for setting child support, such data should not be the primary basis for finding an individual to be underemployed.

KRS 403.212(2)(d) allows a court to base child support on a parent's potential income if it determines that the parent is voluntarily unemployed or underemployed. In *McKinney v. McKinney,*[6] this Court interpreted KRS 403.212(2)(d) to require a finding of bad faith in order to impute income. A trial court could impute income to a party only "when one purposely terminated his employment or changes to employment with lower pay with an intent to interfere with his support obligations." [7]

**2.** Robert G. Lawson, *The Kentucky Evidence Law Handbook,* § 1.00[3][a], p. 7 (Michie, 4th ed., 2003). *See also* Richard H. Underwood & Glen Weissenberger, *Kentucky Evidence 2003 Courtroom Manual* (Anderson Publishing, 2002), Ch. 201, p. 42.

**3.** *See* 29 Am.Jur.2d *Evidence* § 102, p. 141 (1994). *See also Morris v. Morris,* Ky., 293 S.W.2d 243, 244 (1956), (Holding that "the general use of mortality tables has reached such a degree of acceptance that the courts may judicially notice them").

**4.** *United States ex rel. Dingle v. BioPort Corporation,* 270 F.Supp.2d 968, 971–72 (W.D.Mich., 2003). *Citing Jackson v. City of Columbus,* 194 F.3d 737, 745 (6th Cir.,1999), *overruled in part on other grounds, Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 508–14, 122 S.Ct. 992, 996–99, 152 L.Ed.2d 1 (2002); *Grimes v. Navigant Consulting, Inc.,* 185 F.Supp.2d 906, 913 (N.D.Ill.,2002) (taking judicial notice of stock prices posted on a website); and *Cali v. East Coast Aviation Services., Ltd.,* 178 F.Supp.2d 276, 287, n. 6 (E.D.N.Y.,2001) (taking judicial notice of documents from Pennsylvania state agencies and Federal Aviation Administration).

**5.** *Clark v. South Central Bell Telephone Co.,* 419 F.Supp. 697, 704 (D.C.La., 1976) (holding that "[f]or a Court to notice facts judicially, if they are not matters of general knowledge, the sources of those facts must be placed before the Court").

**6.** Ky.App., 813 S.W.2d 828 (1991).

**7.** *Id.* at 829.

Subsequently, the General Assembly amended KRS 403.212(2)(d) to provide: "A court may find a parent to be voluntarily unemployed or underemployed without finding that the parent intended to avoid or reduce the child support obligation."[8]

As a result, the trial court need not find that James has purposely limited his income to find that he is voluntarily underemployed. However, we do not interpret the statute as requiring a trial court to impute income to a parent who earns less than the amount which the occupational statistics indicate he should. Rather, the court must consider the totality of the circumstances in deciding whether to impute income to a parent. Indeed, KRS 403.212(2)(d) specifies that "[p]otential income shall be determined based upon employment potential and probable earnings level based on the obligor's or obligee's recent work history, occupational qualifications, and prevailing job opportunities and earnings levels in the community." While properly supported national wage data may be instructive, it is by no means a controlling factor.

In this case, Leean presented evidence that James has been a certified public accountant since 1979 and that he worked as an accountant throughout the marriage. In addition, there was evidence that he frequently bartered accounting work in exchange for goods and services. James also asserts that he purposely limited his accounting work during the marriage to spend more time with the children. Thus, his reported income from accounting may not accurately reflect his actual earning capacity. On the other hand, there was no evidence offered concerning comparable wages earned by similarly qualified individuals in Pike County or eastern Kentucky. Furthermore, although James has

regularly worked as an accountant, this work has not been his main source of income. Rather, tax records reflect that his primary income came from his gas wells. Under the circumstances, we conclude that the evidence may support the trial court's finding that James is voluntarily underemployed. However, because the trial court improperly considered the wage statistics offered by Leean, we must remand this case for additional findings.

■ James next argues that he, not Leean, should have been awarded sole custody of the parties' two children. KRS 403.270(1), requires a trial court to "determine custody in accordance with the best interests of the child" and to give "equal consideration" to each parent. In making this determination, the court shall consider all relevant factors, including: (a) the wishes of the child's parents; (b) the wishes of the child; (c) the interaction and interrelationship of the child with his parents, siblings, and any other persons who may significantly affect the child's best interests; (d) the child's adjustment to his home, school and community; (e) the mental and physical health of all individuals involved; and (f) information, records, and evidence of domestic violence.[9]

In this case, the trial court heard extensive evidence from medical and psychiatric experts who recommended that Leean be given custody of the children. In addition, the trial court noted that James had failed to recognize the medical and emotional needs of the children because he had allowed the children to be exposed to cigarette smoke and animal hair against the advice of their pediatrician, he had allowed his son to continue excessive use of the computer during visits, and he failed to pay adequate attention to his daughter

8. 1994 Ky. Acts., ch. 330, § 11.

9. KRS 403.270(2).

during visits. Furthermore, the court interviewed the children on three separate occasions and observed a significant change in the children's demeanor between the first interview and the second. "The children were unhappy during the second interview, and the Court was told that [James] had threatened the son. At the third interview, the children told the Court that [James] had screamed at them during his limited Christmas and New Year's Day visitation, but the children's demeanor had improved."

James contends that the trial court ignored evidence that Leean had interfered with his previous visitation and had tried to alienate the children from him. He also asserts that the court overstated the problems that occurred during visitation, and that it has restricted his visitation based upon unsubstantiated allegations by Leean. However we must affirm the trial court's factual findings unless they are clearly erroneous, and due regard must be given to the opportunity of the trial judge to view the credibility of the witnesses.[10] Under the circumstances, we cannot conclude that the trial court clearly erred in granting sole custody of the children to Leean.

But having reached this conclusion, we are concerned about the extremely limited parenting time which the trial court granted to James. Given the trial court's findings and the restricted visitation schedule, it is apparent that the trial court believed that James's contact with the children should be limited. However, the trial court did not expressly find that visitation would seriously endanger the children's mental, physical or emotional health.[11] Nevertheless, James has not appealed from the trial court's judgment regarding

visitation. Moreover, the trial court has ongoing jurisdiction to grant additional parenting time to James upon a showing of a change in circumstances. We would urge the parties and the trial court to work together to resolve the problems which have led to the significant restrictions on the time which the children are allowed to spend with James.

Both James and Leean appeal from the trial court's rulings regarding the marital residence and the debt associated with the residence. James had owned the former marital residence prior to the marriage. However, he sold the property in 1987 and then reacquired it sometime later. In October of 1991, James deeded a one-half interest in the residence to Leean. There are two mortgages on the property. The first mortgage, created in 1990, paid off many of James's pre-marital debts. The second mortgage was created in November 1999. There are also property-tax and IRS tax liens against the residence. The parties stipulated that the residence was worth $147,000.00. The trial court found that the total amount of debt against the property is $72,000.00, leaving $75,000.00 in equity. The trial court concluded that the residence is marital, and awarded it to Leean. The court also assigned both mortgages to Leean, and held her responsible for the city and county-property tax liens. The court did not specifically address any other liens against the property.

James asserts that the trial court erred in finding the residence to be marital property. He claims that, because he owned the house at the time of his marriage to Leean, it retained its character as non-marital property even though he subsequently deeded a one-half interest in the·

---

10. CR 52.01; *Reichle v. Reichle*, Ky., 719 S.W.2d 442, 444 (1986).

11. KRS 403.320(1). *See also Kulas v. Kulas*, Ky.App., 898 S.W.2d 529, 530 (1995).

property to Leean.[12] As an initial matter, there is some question concerning when James reacquired the residence. James testified that he originally purchased the residence from his parents in 1983 or 1984 for $60,000.00. The property was sold in November of 1987, following his first divorce. James asserts that he repurchased it shortly thereafter, before his marriage to Leean. However, the record indicates that James and Leean were married on October 15, 1987, which would have been before any sale and reacquisition of the property. Furthermore, in 1991, James deeded a one-half interest in the property to Leean. This deed states that he acquired it in 1989.

In both the trial court's original findings and in its amended findings, the court did not specifically address when James had reacquired the residence. However, the trial court's discussion of the 1991 deed to Leean and the dates of the various mortgages indicate that it believed that the property had been acquired during the marriage. As James had the burden of proving that he acquired the property prior to the marriage, we find that the trial court's conclusion was supported by substantial evidence.

James further asserts that he adequately traced his non-marital assets into the purchase of the residence and thus the residence retained its character as his separate non-marital property. He further argues that the mortgages which the parties placed on the residence during the marriage do not change its status as non-marital property. Nevertheless, a party claiming that property acquired during the marriage is other than marital property bears the burden of proof.[13] A claimant cannot meet the tracing requirement simply by showing that he or she brought non-marital property into the marriage without also showing that he or she has spent his or her non-marital assets in a traceable manner during the marriage. Under such circumstances, the trial court will not assign the property to the claimant as non-marital property, but it may consider non-marital contribution as a factor when it makes a just division of the parties' marital property.[14] The trial court was not convinced that James had traced his non-marital contributions into the residence, and this finding was supported by substantial evidence.

In her cross-appeal, Leean argues that the trial court failed to consider the effect of the property-tax and IRS tax liens which have been placed against the residence. She contends that these liens substantially reduce the value of the marital property she received, and renders inequitable the trial court's division of marital property. However, the trial court assigned the parties' largest marital asset—the residence—to Leean. KRS 403.190(1) does not require the court to divide the marital property equally, but in "just proportions" without regard to marital misconduct and in light of the following factors: each spouse's contribution to the acquisition of the marital assets, including homemaking duties; the value of each spouse's non-marital property; the duration of the marriage and the economic circumstances of each spouse at the

---

**12.** KRS 403.190(3) provides that all property acquired after the marriage and before a decree of legal separation is presumed to be marital property regardless of how the property is titled. *See also Angel v. Angel,* Ky. App., 562 S.W.2d 661, 665 (1978).

**13.** KRS 403.190(3), *Brosick v. Brosick,* Ky. App., 974 S.W.2d 498 (1998).

**14.** *See Brunson v. Brunson,* Ky.App., 569 S.W.2d 173, 176 (1978); and *Angel v. Angel,* Ky.App., 562 S.W.2d 661, 664–665 (1978).

time of distribution.[15] Although the residence is substantially offset by the mortgages and by the property-taxes also assigned to Leean, the trial court still awarded her a significant interest in this property above these encumbrances. Furthermore, the trial court separately ordered that James would be responsible for the delinquent income taxes. There is little that the trial court could have done about the liens because the Internal Revenue Service is not a party to the proceeding.

Leean also asserts that the trial court erred in finding a gas line purchased during the marriage to be non-marital property. Shortly before the marriage, James received $729,000.00 as his share of the proceeds from the sale of his family's business, Elkhorn Land Company. Prior to the marriage, he used this money to purchase an interest in two partnerships owning three gas wells. After the marriage, a partnership in which James had an interest purchased a gas line. The trial court found that these partnerships were non-marital in nature. We find that this conclusion was supported by substantial evidence and is not clearly erroneous.

Finally, we conclude that the division of assets and debts was not unjust to James. James objects to the trial court's rulings or failure to rule on a number of property-division issues. However, we find no indication that he asked the court for findings on these questions.[16] Furthermore, the trial court stated in its amended judgment that any marital property not specifically enumerated would be awarded to the party in possession of the items. In the absence of a request for more specific findings on these questions, we conclude that any error has been waived.[17]

Accordingly, the May 23, 2002 judgment of the Pike Circuit Court is reversed insofar as it imputed income to James for purposes of computing his child-support obligation, and this matter is remanded to the circuit court for additional findings concerning James's income and earning capacity. In all other respects, the judgment of Pike Circuit Court is affirmed.

ALL CONCUR.

---

**15.** KRS 403.190(1)(a)-(d) *See also Russell v. Russell*, Ky. App., 878 S.W.2d 24, 25 (1994).

**16.** *See* James's Motion to Alter, Amend or Vacate, January 22, 2002, Record on Appeal at 274.

**17.** CR 52.04.