Chad Alan **GERTLER**, Appellant,

v.

Joann **GERTLER**, Appellee.

No. 2008–CA–001367–MR.

Court of Appeals of Kentucky.

Jan. 15, 2010.

Stephen L. Marshall, Lexington, KY, for appellant.

Gregory Y. Dunn, Liberty, KY, for appellee.

Before ACREE and LAMBERT, Judges; HARRIS,[1] Senior Judge.

*OPINION*

ACREE, Judge.

Chad Gertler appeals from a dissolution decree entered by the Casey Circuit Court. He challenges two of the circuit court's rulings: (1) the classification of certain gifts to the parties as marital, and (2) the award of sole custody of the parties' children to their mother, Joann Gertler. We affirm.

The Gertlers were married in 1996. When they separated in 2007, they had four children between the ages of two and eight. During their marriage, the parties adopted what Chad refers to as a "non-worldly" lifestyle, modeled after the lifestyle of the Amish.[2] They lived in a house with no electricity or hot water and embraced the belief that a wife should submit to the authority of her husband, who would make all decisions for the family. All four children were born at home. Joann stayed at home, raising the children, homeschooling them, keeping house, and even making the family's simple clothes. Chad decided that his wife and daughters would wear dresses and cover their heads at all times. All of the family members wore long-sleeved clothes year-round. The family avoided medical treatment, including preventive care, and the children never visited a dentist.

Joann left the marital home with the children in December 2007 and filed a petition to divorce Chad. She asked the circuit court to grant joint custody and to designate her as the children's primary residential custodian. Prior to the scheduled custody hearing, she filed an *ex parte*

---

**1.** Senior Judge William R. Harris sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and Kentucky Revised Statute (KRS) 21.580.

**2.** We note that Chad does not appear to ascribe specifically to any particular religious order, including the Old Order Amish, Amish Mennonite, or Anabaptist Christian denominations. He does emulate the Old Order Amish lifestyle but appears to independently embrace selective Christian tenets.

emergency motion claiming that Chad had obtained the children by trickery and was refusing to return them. The circuit court granted her emergency request for joint custody, ordered that the children would reside with Joann, and granted Chad rights to visitation. Contested issues before the circuit court included whether certain gifts from third parties were marital and who was to be the proper custodian of the children. After a lengthy evidentiary hearing, Joann requested sole custody of the children on grounds that she and Chad were unable to agree on the education, religious training, and healthcare of the children.

The circuit court concluded that funds received on three occasions from Chad's parents and used to obtain housing for the family were marital property. The circuit court also determined that joint custody between the parties was not in the best interests of their children because Chad was unable to accept Joann's equal authority in decision-making. The decision was based, in part, on the circuit court's inability to reasonably foresee a future in which Chad would be able to cooperate with Joann in making decisions regarding their children. Therefore, Joann was awarded sole custody, with Chad to have reasonable visitation. This appeal followed.

 Chad continues to contest these two issues on appeal. He contends that $66,000.00 received from his parents during the marriage were his nonmarital property. He also contends that the circuit court abused its discretion in awarding sole custody of the parties' children to Joann. The circuit court's decision to classify property as marital or nonmarital is a finding of fact and shall not be set aside unless it is clearly erroneous. Kentucky Rules of Civil Procedure (CR) 52.01. A finding of fact is not clearly erroneous when it is supported by substantial evi-

dence "which has sufficient probative value to induce conviction in the mind of a reasonable person." *Hunter v. Hunter*, 127 S.W.3d 656, 659 (Ky.App.2003). Custody awards are reviewed for abuse of discretion. *Coffman v. Rankin*, 260 S.W.3d 767, 770 (Ky.2008).

We first examine the circuit court's decision to classify the money given by Chad's parents as marital property. KRS 403.190(1) requires a circuit court in a dissolution action to assign each party their nonmarital property and then to equitably divide marital property between the parties. Any property acquired by either spouse after they become married is presumed to be marital property, subject to certain exceptions. KRS 403.190(2). One of these exceptions is property gifted to one of the parties. KRS 403.190(2)(a).

Interpretation of KRS 403.190(2)(a), specifically, the determination whether a gift has been made to one or both spouses, has been addressed in a number of Kentucky appellate opinions. In *Sexton v. Sexton*, 125 S.W.3d 258 (Ky.2004), Justice Keller, co-author with Louise E. Graham of *Kentucky Practice–Domestic Relations Law* (3rd ed.2008), adopted the factors to be considered and which were first identified by this Court in *O'Neill v. O'Neill*, 600 S.W.2d 493 (Ky.App.1980).

In *O'Neill v. O'Neill*, a case involving a gift between spouses, the Court of Appeals set forth four (4) factors that trial courts should consider in determining if a transfer was a gift and thus a spouse's nonmarital property: one, "the source of the money with which the 'gift' was purchased," two, "the intent of the donor at that time as to intended use of the property," three, "status of the marriage relationship at the time of the transfer," and four, "whether there was any valid agreement that the transferred property

was to be excluded from the marital property." [*Id.* at 495]

*Sexton* at 268 (footnotes omitted).

The *O'Neill* factors were applied in *Sexton* to gifts from a third party. Therefore, we apply them here. We discuss the first, third, and fourth factors briefly with a more lengthy examination of the second factor, that is, the contested factor in this case—the donor's intent.

■ We begin by noting that the "party claiming that property, or an interest therein, acquired during the marriage is nonmarital bears the burden of proof." *Sexton* at 266. The circuit court concluded that Chad did not satisfy his burden in this regard. We consider the evidence in the context of the *O'Neill* factors and in view of Chad's burden in this regard.

There is no dispute that all of the funds in question were gifts from Chad's parents. However, there is no reason that, considered in isolation, the source of the funds in this case would tilt the balance more in favor of a joint or individual gift. For this factor to give weight to the satisfaction of Chad's burden, we must consider it in the context of the other factors and the circumstances existing at the time of the respective gifts.

The third factor, the status of the marriage at the time of the transfer, does not weigh against a finding that the gifts were to both Chad and Joann. The circuit court found that the parties' marriage was not in jeopardy when any of the gifts were given to them. Chad's parents made the first gift in 1998, and the Gertlers' first child was born the following year. When the second and third gifts were made in 2003 and 2004, the parties already had three children, and Joann was pregnant with their youngest child. The parties remained married for more than three years after the last gift was received. Joann and the children did not leave the marital home until December 2007. We do not intend to suggest that, because the marriage was not in jeopardy, there is a presumption in favor of a joint gift. However, that fact alone does not weigh in favor of an individual gift more so than a joint one.

The fourth factor considers whether any valid agreement excludes the gifts from the marital estate. There is no evidence of such an agreement in this case, and therefore the fourth factor appropriately played no role in the circuit court's analysis.

The only contested factor was the second; that is, whether Chad's parents intended their gifts only for their son, or whether the gifts were to both their son and daughter-in-law. As noted in *Sexton,* the donor's intent is "the primary factor in determining whether a gift is made jointly to spouses or individually to one spouse." *Sexton* at 269. At the hearing, both Chad and his father testified that his parents intended the money given to be a gift to Chad alone. Joann testified that she understood the money to be a gift to their family.

Chad argues that the only direct evidence of donor intent was his father's testimony. He further asserts that the other three *O'Neill* factors are only significant when the donor is unavailable to testify or when evidence of donor intent is contradicted by a witness with direct knowledge. Chad offers no legal authority for this proposition. In fact, Chad's position appears not to be the law. Again, as stated in *Sexton,* "the other three *O'Neill* factors have been described as being makeweight to give the trial court some flexibility when not convinced of the donor's veracity," *id.* at 268 fn. 38, which appears to be the case here.

While the donor's testimony is "highly relevant of the donor's intent[, that intent] may not only be expressed in words, ac-

tions, or a combination thereof, but may be inferred from the surrounding facts and circumstances, including the relationship of the parties[,] as well as the conduct of the parties[.]" *Id.* at 269 (internal quotation marks and citations omitted).

All the gifts in question were given when the parties wished to purchase or build a new marital home, in 1998 and 2003 and 2004, respectively. The first gift, of $6,000.00, assisted the couple in purchasing their first home, an Amish house without electricity or hot water. After this house was sold, Chad's parents gave them two more gifts, totaling $60,000.00, which were combined with the proceeds from the sale of their Amish house and used to build the family's second home. The second two gifts were deposited in Chad and Joann's joint checking account. There was no documentation filed with the bank to indicate that Joann was not to have access to the money, nor did either party maintain a separate bank account. Additionally, both houses were titled to Chad and Joann jointly.

■ "[E]ven though title is not determinative of whether a transfer to a party is a gift, nevertheless, it is evidence for the trial court to consider." *Sexton* at 268. We believe the circuit court properly considered these circumstances and concluded that Chad had failed to meet his burden of establishing that the gifts from his parents were nonmarital. *Id.* at 266 ("A party claiming that property, or an interest therein, acquired during the marriage is nonmarital bears the burden of proof.").

Chad's testimony, and Joann's for that matter, was self-serving. However, the circuit court specifically found other parts of Chad's testimony suspect and did "not accept [his] testimony as being factually correct[,]" (Decree, p. 4), and even declared other parts of his testimony "a sham." (Decree, p. 3). It is also obvious

from the ruling that the circuit court concluded that the testimony of Chad's father regarding donor intent lacked the veracity of a disinterested witness. (Decree, p. 6; "There was no claim that the gifts were anything but to 'the family' until the parties separated."). Clearly the judge, as the trier of fact, had the right to believe or not believe, in whole or in part, the testimony of Chad's father regarding donor intent. *Bissell v. Baumgardner,* 236 S.W.3d 24, 29 (Ky.App.2007), *quoting Commonwealth v. Anderson,* 934 S.W.2d 276, 278 (Ky.1996).

In view of the other "makeweight" factors and circumstances, we cannot agree with Chad that his father's testimony is controlling of the issue. Chad failed to satisfy his burden of establishing that the gifts were nonmarital. The circuit court found that the monetary gifts from Chad's parents were given jointly to the parties during their marriage; therefore, those gifts were marital property. Since these determinations are supported by substantial evidence, the circuit court's ruling on this issue is not clearly erroneous.

■ We turn now to the circuit court's decision to award Joann sole custody of the parties' children. When determining an award of child custody, KRS 403.270(2) directs the circuit court to give equal consideration to both parents and to award custody in accordance with the best interests of the children involved. The statute further permits an award of joint custody if it is in the children's best interests. KRS 403.270(5). However, there is no statutory preference for an award of joint custody, an arrangement which entails joint decision-making and significant participation by both parents in the upbringing of their children. *Squires v. Squires,* 854 S.W.2d 765, 769 (Ky.1993).

The circuit court gave equal consideration to Chad and Joann as custodians before determining that it was in the best interests of the children that sole custody be awarded to Joann. Nevertheless, Chad argues that the circuit court's custody award was an abuse of its discretion. He takes issue with the circuit court's findings that he would attempt to dominate Joann and that he would not be able to cooperate in making joint decisions affecting their children. Chad noted that *Squires* specifically declined to require a cooperative spirit as a prerequisite for granting joint custody and holding that to do so "would permit a party who opposes joint custody to dictate the result by his or her own belligerence[.]" *Squires*, 854 S.W.2d at 768.

How then do courts justify a joint custody award to parents who, in the throes of divorce, display antagonism one to the other? In *Squires*, the Kentucky Supreme Court directed circuit courts to "look beyond the present and assess the likelihood of future cooperation between the parents.... By cooperation we mean willingness to rationally participate in decisions affecting the upbringing of the child." *Squires*, 854 S.W.2d at 769. The circuit court followed this admonition and noted Chad's history of making all of the major decisions for his family, as well as his habit of establishing unconventional rules and regulations not only for the children to follow, but for Joann to follow as well.

Chad contends, somewhat disingenuously, that "the essence of good parenting" requires a father of young children to make major decisions and to set rules and regulations for their behavior. (Appellant's brief at page 20.) Of course, nothing in the circuit court's order suggests that it is improper for parents to make and enforce rules for their children. Rather, the circuit court takes Chad to task for excluding Joann from the decision-making, even suggesting that Chad does not merely desire to control the activities of his wife and children, but to "control their minds" as well. (Decree, p. 4). Chad counters that Joann was a willing participant in their "non-worldly" lifestyle and embraced the belief that God required her to submit to her husband's authority in all things.

On the other hand, Joann argues that Chad was a dictator deciding what clothes, toys, and friends their children would have. The children were not allowed to watch television and were required to wear plain, long-sleeved clothes, similar to those worn by members of the Amish community. Joann and her daughters had to wear head coverings at all times. She testified that Chad required her to homeschool the children and did not purchase health insurance or permit them to visit doctors or dentists. Further, Joann was prohibited from visiting friends, going shopping, or talking to her mother by telephone, unless she obtained Chad's prior permission.

Even if Joann genuinely embraced Chad's version of the concept of wifely subservience at some point in the marriage, there is no question that at the time of the divorce, she no longer did. She testified that she wanted to stay in Casey County, continue working outside the home, and educate the children at Galilean Academy, a private, Christian school, where she was employed. Joann also disavowed the "non-worldly" lifestyle which Chad demanded. She had a desire for the children to live a more conventional lifestyle with her. She urges this Court to uphold the circuit court's award of sole custody, contending that Chad's beliefs prevent him from accepting her equality in making decisions which affect the children.

Chad testified that Joann wanted him to make all the decisions and that she forced him to make more decisions regarding the children than he desired to make alone.

In its order, the circuit court found that testimony untrue. Appellate courts are required by CR 52.01 to defer to the circuit court's ability to judge witness credibility in proceedings where the circuit court acts as fact finder. We, therefore, cannot dispute the circuit court's judgment regarding Chad's veracity.

After a lengthy hearing, including testimony from more than a dozen witnesses, the circuit court found that Chad would not be able to cooperate with Joann in reaching decisions affecting their children's educational, religious, and medical needs. This finding is not clearly erroneous. Since joint custody was not in the best interests of the children, the circuit court considered the interaction of each parent with the children and determined that Joann was better suited as custodian. Chad, however, was granted reasonable visitation rights.

When reviewing the propriety of a custody award, the test is not whether some other court may have reached a different decision, but rather, whether the circuit court abused its discretion. *Cherry v. Cherry*, 634 S.W.2d 423, 425 (Ky.1982). To prove abuse of discretion, a party must show that the circuit court that decided the case acted arbitrarily, unreasonably, or unfairly. *Kuprion v. Fitzgerald*, 888 S.W.2d 679, 684 (Ky.1994). Chad has not shown that the circuit court was clearly erroneous in finding he would not be able to cooperate with Joann in future decision-making regarding their children, nor has he shown that the award of sole custody to Joann was arbitrary, unreasonable, or unfair.

For the foregoing reasons, the order of the Casey Circuit Court is affirmed.

ALL CONCUR.