RENDERED:  OCTOBER 16, 2020; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-1522-ME

SCOTT W. NELSON                                                  APPELLANT


APPEAL FROM FRANKLIN CIRCUIT COURT
FAMILY COURT DIVISION
v.        HONORABLE SQUIRE WILLIAMS, III, JUDGE
ACTION NO. 18-CI-00223


MELISSA L. JENNINGS                                              APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CALDWELL, JONES, AND KRAMER, JUDGES.

CALDWELL, JUDGE:  Scott W. Nelson appeals from the judgment of the

Franklin Circuit Court, Family Court Division, regarding custody and timesharing

of his son with Melissa L. Jennings.  We affirm.

# FACTS

Nelson and Jennings have two children together.[1]  Their daughter (Daughter)[2] reached the age of eighteen years in the fall of 2019 and has presumably graduated high school by now.  Their son (Son)[3] will be seventeen in September 2020.  Son has been diagnosed with autism, developmental delays, emotional problems, and problems with speech and communication.

Due to his disabilities, Son received benefits under the Michelle P. Waiver (MPW) program.  Jennings acted as Son's MPW administrator or representative, having authority to hire or fire certain people providing services and the responsibility of approving their timesheets.  Jennings was also employed part-time as a caregiver for a friend who received similar benefits.  Jennings had a flexible work schedule.  Nelson was employed full-time as a truck driver and had a less flexible work schedule often requiring long work days beginning in the early mornings.

After previously living with Jennings and the children for many years, Nelson moved out of the family home in December 2017.  In March 2018, Nelson filed a petition in the family court division of the Franklin Circuit Court requesting

---

[1] The parties were never married.

[2] Nelson has not seen Daughter since December 2017.

[3] All issues on appeal revolve around Son only.

that he be granted sole custody of his children with Jennings. Following briefing and an October 2018 evidentiary hearing, the trial court entered a temporary custody order in early December 2018 for Nelson and Jennings to have joint custody of their children. Its temporary custody order also required that the parties have discussions with each other and reach an agreement before making any major decisions about the children, including those affecting the children's health, education, and extra-curricular activities.

The trial court issued another temporary order a couple of weeks later with the same custody provisions along with a requirement that both parties remain sober while providing care for their children. This second temporary order also contained provisions about timesharing. It determined that Daughter could make her own decisions about spending time with her parents. For Son, it set out a schedule where he would be in Nelson's care from Saturday morning at 10 a.m. until Tuesday morning when school began or at 8 a.m. when school was not in session. Then he would be with Jennings from after school or 8 a.m. Tuesdays until Saturday mornings at 10 a.m. Also, the order stated that holidays would be split evenly between the parties according to the Fayette County Model Guidelines.

In early March 2019, Nelson filed motions to modify temporary custody, for him to be designated as Son's joint representative for the Michelle P.

Waiver program, and for Jennings to show cause or be held in contempt for alleged unilateral custodial decisions in violation of the temporary custody order.

As the basis for Nelson's motion to modify temporary custody to him having temporary sole custody, he alleged that Jennings had submitted requests for her mother to receive payments under the Michelle P. Waiver program for providing services to Son during times when Son was in Nelson's care. As an alternative to modifying temporary custody, Nelson moved the trial court to enter a decree of joint representation for Michelle P. Waiver benefits so that he could participate in decision-making about those benefits.

As the basis for Nelson's motion for Jennings to show cause or be held in contempt for violating the temporary custody order, he alleged that Jennings had made unilateral custodial decisions such as allowing Daughter to get her nose pierced and scheduling Son's medical and dental appointments without notifying him. He had also previously alleged that Jennings had unilaterally fired a longtime caregiver of Son in an earlier show cause motion that was, apparently, not previously ruled upon by the trial court. As a sanction for these alleged unilateral custodial decisions, he requested that Jennings be ordered to pay his legal fees in bringing the motion.

In mid-March 2019, the trial court denied Nelson's motion for temporary sole custody but granted his request for a decree of joint representation

for Michelle P. Waiver program benefits. This decree provided that the parties would have equal decision-making authority about Son's medical care and Michelle P. Waiver benefits. It also required the parties to communicate with each other about health-related appointments and to make sure that Son took his medications as prescribed. A few days after entry of this decree, the trial court entered a separate order for Jennings to pay $750 in legal fees incurred by Nelson.

In May 2019, the trial court heard evidence for making its permanent custody decision over the course of two separate days. In July 2019, it entered its findings of fact, conclusions of law, and order concerning permanent custody and timesharing. The trial court concluded that the parties should have joint custody but that the children would primarily reside with Jennings. It accorded Nelson timesharing with Son from Saturday at 10 a.m. through Tuesday at the beginning of school or at 8 a.m. Holidays were to be split evenly between the parties utilizing the Fayette County Model Guidelines, which provide for a child to spend alternate weeks with each parent over the summer break.

Nelson filed post-trial motions for relief under Kentucky Rules of Civil Procedure (CR) 52, CR 59, and CR 60. He asked the trial court to alter, amend, or vacate its judgment, make more specific findings, permit a new trial or hear additional proof based on newly discovered evidence, and to issue an order for Jennings to show cause for her failure to fully comply with its earlier order to

pay legal fees.[4]  The trial court denied these motions following further briefing and a hearing except for amending its final custody decision to state that it was a final and appealable judgment.  Nelson then filed a timely appeal.

Nelson alleges several errors by the trial court.  He argues that the trial court failed to make certain findings which he deems essential and that some factual findings were clearly erroneous.  He attacks the validity of the trial court's decisions on both child custody and timesharing.  He contends the trial court should have found Jennings in contempt for making unilateral custody decisions in violation of the trial court's temporary custody order.  And he faults the trial court for not reopening the proof to consider new evidence after it issued its permanent custody decision or for not granting a new trial.

## STANDARD OF REVIEW

We review the trial court's child custody and timesharing decision to determine if the trial court issued clearly erroneous factual findings or abused its discretion.  *Frances v. Frances*, 266 S.W.3d 754, 756 (Ky. 2008).

Kentucky Revised Statutes (KRS) 403.270(2) establishes the standard for a trial court's initial child custody and timesharing decision.  The trial court must consider the best interests of the child and give equal consideration to each

---

[4] Jennings had apparently paid all legal fees which the trial court had previously ordered her to pay by the time the trial court entered its order denying most of Nelson's post-trial motions.

parent. The trial court must apply a presumption that joint custody and equal timesharing is in the child's best interest, but this presumption may be rebutted by a preponderance of the evidence. In determining the child's best interests, the trial court shall consider the factors specified in KRS 403.270(2). If the trial court determines that a deviation from equal parenting time is appropriate, it must set forth a parenting time schedule maximizing the time each parent has with the child and "consistent with ensuring the child's welfare." KRS 403.270(2).

Despite Nelson's assertions of error, which we discuss below, we conclude that the trial court complied with the requirements of KRS 403.270(2).

## **ANALYSIS**

I. *Trial Court Issued Sufficient Factual Findings and Specific Challenged Findings Were Not Clearly Erroneous*

Nelson contends that the trial court erred in failing to make certain requested findings which Nelson believes were necessary for a proper determination of Son's best interests and that the trial court issued clearly erroneous factual findings on some matters. We disagree.

Nelson requested desired findings from the trial court in his tendered findings and in his post-trial motions for CR 52 and CR 59 relief. So, these issues appear preserved for our review. But we disagree with his assertions that certain desired findings were necessary to properly determine custody and timesharing in

Son's best interest or that other specifically challenged factual findings were clearly erroneous.

### A. Further Findings Regarding Need for Year-Round Therapy Unnecessary

Nelson contends that the trial court erred in not making a finding that year-round therapy is required to serve Son's best interest. He argues that the trial court erred in not making a finding that Jennings acted contrary to Son's best interest by discontinuing (or not making arrangements for) speech therapy and occupational therapy during the summer.

The trial court issued findings that Jennings discontinued Son's out-of-school therapy (except for music therapy) after the parties' separation and that there were no current arrangements for Son to get occupational and speech therapy over the summer. It also issued findings that both parties believed that Son needed such therapy over the summer. We conclude that no additional factual findings regarding Son's need for therapy over the summer break were necessary to properly determine custody and timesharing in Son's best interests.

Perhaps Nelson meant to argue that the trial court should have issued an order for year-round therapy. But he does not assert that he requested such an order. And, as the parties have joint custody and agree that year-round therapy is best, presumably they could act together to obtain such year-round therapy without further order from the trial court. To the extent that the parties are unable to work

-8-

together in obtaining year-round therapy, they could seek additional relief or orders from the trial court upon proper motion.

### B. Findings on Fast Food and Obesity Unnecessary

Nelson asserts that Son is obese and argues that the trial court should have made a finding that Jennings has failed to act in Son's best interest by allowing him to eat fast food. He argues that the trial court erred in not making this finding. The trial court issued detailed findings concerning both parties' efforts to provide for Son's health needs in determining that joint custody was in Son's best interest. The finding requested by Nelson was not required to properly assess Son's best interests. We find no error in the trial court not issuing this desired finding.

Furthermore, from our review of Jennings' testimony cited by Nelson, she testified that she or her mother would sometimes buy food at restaurants such as Wendy's or McDonald's for Son when he was hungry. When asked if this was in his best interest, she replied yes. A reasonable interpretation of her testimony is that she believed it was in Son's best interest to feed him when he was hungry. We decline to opine that a parent does not act in a child's best interest by allowing the child to occasionally eat fast food.

*C. Requested Finding About Jennings' Alleged Communication With Daughter About Court Proceedings Not Required*

Nelson argues the trial court should have made a finding that Jennings showed poor custodial judgment in communicating with Daughter about court proceedings. He cites his own testimony about his receiving a text from Daughter complaining about Nelson taking Jennings to court and implies that Jennings discussed the case with Daughter. But from our review of the hearing, Jennings testified that she did not discuss court proceedings with Daughter and that Daughter's knowledge of court proceedings came from opening Jennings' mail.

From our review of the trial court's judgment, it did not explicitly find whether Jennings communicated with Daughter about court proceedings.[5] But further findings about any alleged communications with Daughter about the court case do not appear necessary for determining what custody and timesharing arrangements were in the best interests of Son.

*D. Findings About Jennings' Mental and Physical Health Neither Clearly Erroneous Nor Insufficient*

Nelson argues the trial court made an incorrect finding that neither party had physical or mental health issues which would impair their making

---

[5] To the extent that the trial court may have believed Jennings' testimony that she did not communicate with Daughter about the court case despite conflicts with Nelson's testimony indicating that Jennings must have discussed the case with Daughter based on the text he received, the trial court was entitled to determine who to believe. *Ball v. Tatum*, 373 S.W.3d 458, 465 (Ky. App. 2012).

decisions about their children. And he contends that the trial court should have made findings of Jennings having physical and mental health concerns, specifically, about her allegedly attempting suicide in January 2018 and her admitting to smoking marijuana. But Jennings denied attempting suicide in her testimony despite any written notations in medical records to the contrary.[6] And she testified to not smoking marijuana in the presence of her children and was ordered by the trial court (as was Nelson) to be sober when taking care of the children.

 The trial court issued its permanent custody decision in July 2019, about a year and a half after Jennings' treatment for mental health issues in January 2018. While some evidence might indicate that Jennings has had health issues, the trial court's finding that neither party **currently** had mental or physical health issues **impairing their decision-making** was not clearly erroneous.

 Nor do we find that further findings concerning Jennings' mental or physical health were necessarily required. From our review of the proceedings, the trial court orally noted that both parties had suffered from addiction in the past,

---

[6] In his factual summary, Nelson quotes a verified petition for Jennings' involuntary hospitalization indicating that she "is a person with an intellectual disability and that he/she presents a danger or threat of danger to self, family or others if not immediately restrained." From our review of this document, a box was checked by this statement. Nelson has not pointed to any other evidence of record that Jennings has an intellectual disability and appears to focus on Jennings' alleged mental health issues rather than her having any intellectual disability in his arguments in his brief.

-11-

appeared to have overcome that for now, and would need to continue to work on this issue in the future. This is consistent with the trial court's written finding that currently the "parties do not have any physical health issues or mental health issues which would prevent them from being able to make decisions on behalf of their children." Additional, more specific findings on their health were not required in assessing Son's best interests.

### E. No Reversible Error in Trial Court's Findings About Use of MPW Benefits

Nelson asserts in his brief that "the trial court failed to make specific and accurate findings regarding the fraudulent actions of [Jennings] and their direct impact on [Son]; and failure to do so was clear error." On March 7, 2019, Nelson filed motions alleging that Jennings was fraudulently submitting timesheets for her mother (Geraldine Hall) providing caregiver services for Son when Son was in Nelson's care. Hall resigned from her participation as a paid provider of Michelle P. Waiver services around this same date. The trial court entered its decree of joint representation for MPW benefits on March 14, 2019. In May 2019, the trial court heard evidence for making its permanent custody decision.

In her trial testimony, Jennings admitted to not closely looking at some of her mother's timesheets for MPW benefits before signing them but denied signing any timesheets which she knew to be false. Nelson presented testimony and documentary evidence at trial to show that Son could not have been receiving

services from Hall on a number of dates for which Jennings approved Hall's timesheets because Son was spending time with Nelson or Nelson's mother or was at day camp.

The trial court's written findings noted Nelson's allegations, found that Jennings had failed to properly administer Son's MPW benefits by not closely reviewing Hall's timesheets before approving them, found that any denial of Son's MPW benefits was caused by Jennings' improper administration of these benefits, and expressed suspicion that Hall benefitted from the MPW program more than Son. The trial court ordered that the parties have joint decision-making authority over Son's use of MPW benefits including selecting "the use, type and providers of benefits" and that a third party (whether chosen by them or appointed by the Commonwealth) must review the timesheets of Son's service providers.

In Nelson's post-trial motions, he requested that the trial court issue factual findings that he **proved** his allegations of Jennings' improperly approving inaccurate timesheets from Hall and that Jennings' repeated approval of inaccurate timesheets amounted to poor custodial judgment, not just isolated instances of not always checking over timesheets carefully as the trial court found. Although expressing approval for the finding that Son may have been denied benefits due to Jennings' improper administration, Nelson requested more extensive findings on Jennings' culpability. For example, he pointed out her awareness of how such

-13-

timesheets should be filled out due to her own experience as a caregiver, her testimony that signing incorrect timesheets did not amount to taking anything from Son, and her paying Hall at a higher rate than a purportedly more qualified caregiver.

Jennings' response cited her testimony that Hall provided services in Jennings' home and that Jennings was caring for Son along with Hall during these times and claimed this testimony was uncontroverted. In his reply, Nelson contended Jennings' assertion that her testimony was uncontroverted was false. He cited trial testimony from his mother and himself about Son being at other locations when Hall claimed to be providing services. He also pointed to descriptions in Hall's timesheets of taking Son to restaurants, stores, etc., which were clearly not activities done at Jennings' home.

Following a hearing, the trial court summarily denied Nelson's requests for further findings. We have carefully reviewed its written findings on Jennings' administration of MPW benefits as well as its orders granting the parties joint authority over these benefits and requiring a third party to review timesheets submitted for reimbursement. The trial court's factual findings on this issue are not clearly erroneous nor insufficient for properly assessing Son's best interests in making its decisions on custody and timesharing. It was not necessary for the trial court to explicitly address in detail whether Nelson proved all his allegations. And

its finding that Jennings' failure to closely scrutinize employees' timesheets applied only to her mother's timesheets is supported by substantial evidence (Jennings' testimony) and therefore not clearly erroneous. *Ryan v. Ryan*, 473 S.W.3d 637, 641 (Ky. App. 2015) ("A family court's factual findings are reviewed for clear error. CR 52.01. A finding supported by substantial evidence is not clearly erroneous.").

Although we (like the trial court) sympathize with Nelson's frustration that Jennings' past carelessness likely resulted in less than optimal utilization of MPW benefits for Son, further findings expounding on Jennings' culpability or other details were not necessary. The trial court's findings on this issue were not clearly erroneous.

II. *No Abuse of Discretion in Trial Court Awarding Joint Custody to the Parties Despite Evidence of Jennings Signing Inaccurate Timesheets*

Nelson contends that the trial court abused its discretion in awarding joint custody of Son to the parties rather than awarding sole custody of Son to Nelson. He argues that Jennings signing incorrect timesheets numerous times over a long duration of time demonstrates poor custodial judgment. He cites *Polley v. Allen*, 132 S.W.3d 223 (Ky. App. 2004) for the proposition that sole custody is appropriately awarded when evidence shows the other parent has failed to recognize a child's medical and emotional needs. *Id.* at 227. Nelson points with approval to the trial court's findings that any denial of MPW benefits to Son was a

-15-

direct result of Jennings' improper administration of benefits and that the trial court suspected Hall benefitted more from the MPW program than Son. He points to these findings to argue that he should have gotten sole custody.

Nelson also contends that the trial court failed to consider "relevant facts per KRS 403.270" and should have considered Jennings' "poor decisions as to MPW along with her poor decisions regarding scheduling medical appointments, forgetting [Son's] medications, administering a poor diet to [Son], talking to [Daughter] about the case, her attempted suicide, her restriction on [Son's] therapy services, unilaterally firing [Son's] long-term caregiver, making unilateral decisions as to [Daughter]" and her smoking marijuana and cigarettes. He points to Jennings' trial testimony that signing incorrect timesheets did not take anything away from her son and that she did not think Son was more susceptible to harm than other children despite his disabilities as Son could take care of himself. He argues these statements show lack of good judgment and that Jennings "is not the proper individual to make custodial decisions" for Son.

Nelson also contends that in addition to allegedly showing lack of good judgment, the evidence shows that Jennings failed to cooperate with him in making decisions and sought to control him or dominate the decision-making. He argues this alleged lack of cooperation or seeking domination or control indicates that sole custody should have been awarded to him (citing *Squires v. Squires*, 854

S.W.2d 765, 768-69 (Ky. 1993) and *Gertler v. Gertler*, 303 S.W.3d 131, 135-36 (Ky. App. 2010)).  While these cases indicate that in certain circumstances a sole custody award may be proper when one party attempts to dominate the other rather than cooperate in joint decision-making, neither case requires that joint custody never be awarded when parties have difficulty agreeing on some decisions.  In fact, *Squires* recognizes that parties to custody disputes rarely have completely cooperative attitudes about sharing decision-making and that "[t]o require goodwill between the parties prior to an award of joint custody would have the effect of virtually writing it out of the law."  854 S.W.2d at 768-69.

The trial court's findings recognized that both parents had made some bad decisions and that they did not communicate well with each other.  However, the trial court's findings do not indicate that Jennings was the only party who tried to assert control over decision-making.  Its Findings of Fact No. 24 indicates that Nelson was the party trying to assert control by refusing to consult Jennings or communicate further about Son's dental appointments.  And this finding is supported by substantial evidence.

While the trial court found that neither party consistently made good decisions despite loving the children, there was no abuse of discretion in the trial court awarding joint custody rather than sole custody to Nelson.  Despite the trial court's expressed concerns about some of Jennings' actions (such as her improper

-17-

administration of MPW benefits), the trial court also expressed concerns about some of Nelson's actions as noted above. Considering these concerns, we cannot blame the trial court for not granting Nelson's request for sole custody.

Although Nelson acknowledges that the trial court was not faced with a motion to modify child custody subject to the requirements of KRS 403.340, he argues that the trial court should have applied the standard of KRS 403.340 because it refused to modify the substance of its temporary custody order in making its permanent custody decision.[7] Thus, he contends that the trial court erred in not making findings that Jennings' actions (especially her improper administration of MPW benefits) may endanger Son's physical, mental, moral, or emotional health. *See* KRS 403.340(2)(a) (prohibiting motions to modify existing child custody decrees filed less than two years after the original decree unless the trial court permits the motion based on affidavits showing a reason to believe that the "child's present environment may endanger seriously his physical, mental, moral, or emotional health"). However, he fails to show where he requested the trial court to make findings about whether Jennings' actions may endanger Son's health, so any error in not making these findings does not appear to be preserved

_____

[7] Modification of temporary custody orders is subject to a different standard than modification of permanent custody orders, however, as KRS 403.280(6) provides: "Subject to KRS 403.320(4) and 403.340(5), modification of a temporary custody order may be sought when there is a material and substantial change in the circumstances of the parents, de facto custodian, or child."

-18-

for our review.[8]  Furthermore, as the trial court was tasked with making an initial permanent custody determination rather than a motion to modify an existing permanent custody order, the trial court did not err in applying KRS 403.270(2) rather than KRS 403.340(2)(a).

Despite Nelson's arguments, the court properly applied the presumption for joint custody and considered relevant factors in KRS 403.270(2) from our review of its judgment.  Even if another court might have reached a different result, we cannot say that the trial court's award of joint custody amounted to an abuse of discretion.  *See Cherry v. Cherry*, 634 S.W.2d 423, 425 (Ky. 1982) (in reviewing child custody decisions, "the test is not whether we would have decided it differently" but whether trial court abused its discretion or issued clearly erroneous factual findings).  Finding no reversible error, we affirm the trial court's custody decision.

III.    *No Reversible Error in Trial Court's Timesharing Decision*

Nelson contends that the trial court erred in finding KRS 403.270(2)'s presumption in favor of equal parental timesharing to be overcome by Son's need

---

[8] Nelson cited the presumption for joint custody found in both KRS 403.270(2) (governing initial custody determinations) and in KRS 403.340(6) (governing proceedings to modify custody) in his post-trial motions.  But his written motion did not invoke KRS 403.340(2)(a) nor specifically argue that the trial court consider whether Jennings' actions might endanger Son's health.  If Nelson ever asked the trial court to consider whether Jennings' actions might endanger Son's health in making its initial permanent custody determination, he has not provided this Court with a cite to the record to show where this argument was made to the trial court.

-19-

for consistency. He argues that prior consistency in timesharing was lacking due to conflicting evidence about whether Jennings or Hall was caring for Son during Jennings' parenting time and from Hall having resigned from paid caregiving under the Michelle P. Waiver program. He further asserts that the trial court failed to make specific findings required by KRS 403.270(2) regarding Son's best interests in continuing the same sort of timesharing schedule used in its temporary custody order.[9] We disagree.

In reviewing a trial court's timesharing provisions, if the trial court has complied with KRS 403.270's requirements, including consideration of all relevant factors, we must defer to its decision if its findings are not clearly erroneous and it has not abused its discretion. *Frances*, 266 S.W.3d at 758-59. Having carefully reviewed the record, we see no reason to not defer to the trial court's timesharing decision in this case. From our review of the temporary custody hearing, the trial court carefully devised a timesharing schedule to maximize each party's opportunity to spend time with Son based upon their respective work schedules. The trial court expressed hope that each party would

---

[9] Nelson cites an unpublished case for the proposition that a trial court must make specific findings regarding how the presumption for equal parenting time is overcome or "if the relevant factors under KRS 403.270(2) were considered." (Appellant's brief, page 20). But Nelson did not comply with the requirements of CR 76.28(4)(c) regarding citation of unpublished opinions. In any event, as further discussed in the body of our opinion, we conclude that the trial court issued sufficient findings regarding how the presumption for equal parenting time was overcome which reflects careful consideration of relevant factors under KRS 403.270(2).

primarily take care of Son themselves and minimize delegation of Son's care to others during their allotted time with him. Nelson was given the lion's share of weekend time with Son (from 10 a.m. Saturday mornings until Tuesday mornings). And the weekday time allotted to Nelson was based on his representations to the trial court that on Mondays and Tuesdays he could arrange his work schedule to take Son to school himself rather than delegate Son's school transit to others because Son sometimes reacted badly to non-parents taking him to school. Although there was not a precise 50/50 time split under this arrangement, Nelson still had significant time to spend with Son during the week, including most weekend hours when Son would presumably not be at school and Nelson would not be at work.

Following the permanent custody trial, the trial court made specific findings concerning both parties' work schedules and what days they were available to take Son to school in the mornings and to take care of him when he got out of school at about 3 p.m. It found that Jennings could generally take both children to school and meet their bus in the afternoon. It found that Nelson got off work at 3 p.m. on Mondays and Tuesdays but worked later other weekdays and that Nelson typically did not have to work Saturdays or Sundays. Despite its prior order that Nelson take Son to school himself on his timesharing days and Nelson's having advised the court he could arrange his work schedule to do so, the trial

court found that Nelson could not take Son to school since he would have to drop him off too early and that Nelson depended on others to take Son to school during Nelson's timesharing days "not unlike the Respondent's [Jennings'] reliance on others during her timesharing."

The trial court found that Son benefits from consistency and had gotten used to the timesharing schedule devised at the October 2018 temporary custody hearing. And it concluded that the presumption in favor of equally shared parenting time in both KRS 403.270(2) and KRS 403.340(6) had been overcome by Son's need for consistency so that equal timesharing was not in his best interest. Thus, it determined that the prior timesharing schedule would remain in place with Nelson having time with Son from Saturday morning at 10 a.m. until Tuesday mornings at 8 a.m. or when school began.

The trial court issued detailed findings of fact about factors listed in KRS 403.270(2), including the parties' wishes, Son's relationships with his parents and other family members, the parties' and Son's health, Son's adjustment, and the motivations of both parents. Although the trial court succinctly noted Son's need for consistency as reason to continue with its prior timesharing schedule rather than divide parenting time equally, the trial court fully considered relevant factors in making its overall custody and timesharing decision. Furthermore, it devised the timesharing schedule to maximize the time Nelson could spend with Son

considering Nelson's work schedule and consistent with ensuring Son's welfare as required by KRS 403.270(2).

In short, the trial court properly considered the requirements of KRS 403.270(2) and neither abused its discretion nor issued clearly erroneous factual findings on timesharing. Thus, there is no reason for us to disturb its decision.

## IV. *No Reversible Error in Trial Court Not Holding Jennings in Contempt*

Nelson argues that the trial court's judgment omitted a finding that Nelson was unable to attend Son's dental appointment due to Jennings' giving him a false date and failed to rule on his request that Jennings be held in contempt for failing to discuss Daughter's nose piercing with him. He argues that Jennings made unilateral custodial decisions in violation of the temporary custody order in these regards and should have been held in contempt.

The trial court explicitly found in its July 18, 2019 order that Jennings was not found to be in contempt for allegedly failing to notify Nelson of Son's dentist appointments in January and February 2019 and that Jennings was not found in contempt for allegedly failing to administer Son's medications as prescribed by Son's doctors. The trial court also found that both parties engaged in poor decision-making, including Nelson's simply not giving Son his medication rather than telling Jennings she had not sent the right medication or any medication at all. It further found that Nelson had scheduled a dental appointment without

-23-

consulting Jennings, did not respond to her request for other dates when she inquired about rescheduling because he was angry, and did not attend an appointment Jennings told him about nor tell her in advance he could not attend.

Despite Nelson's claims that Jennings gave him the wrong date or failed to inform him of Son's dental appointment, the evidence about why Nelson was not at Son's dental appointment on one or two occasions was conflicting. Nelson testified to Jennings failing to give him the proper information. Jennings testified to Nelson's trying to schedule dental appointment dates without consulting her, Nelson's refusing to communicate with her about rescheduling, and Nelson's not showing up for a dental appointment after she told him about rescheduling it during a timesharing exchange. Given the conflict in their testimony, the trial court was entitled to determine who to believe on this issue, *Ball v. Tatum*, *supra*, and resolved the conflict in Jennings' favor rather than Nelson's. In its Finding of Fact No. 24, the trial court found that Nelson had attempted to gain control by refusing to communicate about the dental appointment. Thus, the trial court did not omit a finding that Jennings failed to give Nelson correct information about dental appointments but made a finding to the contrary based on substantial evidence. In short, the trial court resolved this dental appointment issue against Nelson and its factual finding on the matter is not clearly erroneous.

As for Jennings' failing to consult Nelson about Daughter's nose piercing, the trial court had not specifically explicitly found this action to be in contempt but it had earlier afforded Nelson his requested relief for this. Nelson had filed a motion for Jennings to show cause why she should not be held in contempt for unilateral custodial decisions in violation of the temporary custody order in March 2019. Nelson requested that Jennings pay his legal fees in bringing the motion and referred to Jennings allowing Daughter to get her nose pierced and allegedly rescheduling Son's dental appointments without informing Nelson as examples of her acting unilaterally in violation of the temporary custody order. The trial court entered an order tendered by Nelson which ordered Jennings to pay $750 in legal fees for violating the temporary joint custody order.

In their appellate briefs, the parties express different opinions regarding whether nose piercing is a major custodial decision. The trial court did not explicitly express its opinion on this issue, but it granted Nelson his requested relief for Jennings' unspecified violations of its temporary custody order— payment of legal fees. And though Nelson, in his post-trial motion, requested that the trial court express an opinion about the nose piercing without consulting him constituting contempt, the request was summarily denied along with others following a hearing on those motions.

Kentucky precedent recognizes that a trial court has wide discretion in utilizing its contempt powers and that an appellate court must not disturb the trial court's contempt decision unless the trial court has abused its discretion. *See*, *e.g.*, *Meyers v. Petrie*, 233 S.W.3d 212, 215 (Ky. App. 2007). The trial court here had already required Jennings to pay $750 in Nelson's legal fees as a sanction for unspecified violations of its temporary custody order in granting Nelson's earlier show cause motion and in entering and signing an order tendered by Nelson. Under the facts and circumstances of this case, we cannot say that the trial court erred in not making more explicit or specific contempt findings or not affording Nelson further relief on these issues. While ideally parents would consult one another about a child's nose piercing or making dental appointments, we cannot say that the trial court's not finding either incident to rise to the level of contempt or to require further relief is an abuse of discretion—especially since the trial court found that it was Nelson rather than Jennings who failed to communicate about dental appointments.

## V.     *No Reversible Error in Not Reopening Proof or Not Granting a New Trial*

Lastly, Nelson asserts that the trial court erred in denying his post-trial motions to reopen the judgment and permit the presentation of additional proof or in not granting a new trial. In his post-trial motion, Nelson asked for a new trial under CR 59.01(f) (verdict not supported by sufficient evidence or contrary to law)

and CR 59.01(g) (newly discovered material evidence which, with reasonable diligence, could not have been discovered before trial). He also asked for relief under CR 59.07, which provides:

> On motion for a new trial in an action tried without a jury, the court may grant a new trial or it may open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions, and enter a new judgment.

In his initial appellate brief, Nelson cites CR 59.01(f), CR 59.01(g), and CR 59.07. But he directly argues in this initial brief only that the trial court erred in refusing to reopen the proof to consider new information and refusing to alter its judgment, not that the trial court erred in refusing to grant a new trial. Jennings' brief argues that the trial court did not err in denying Nelson's motions for a new trial under CR 59.01(f) and CR 59.01(g). Nelson's reply brief asserts that the trial court should have considered the new information presented in his post-trial motions or granted him a new trial.

Nelson contends that after the trial court heard evidence to determine permanent custody in May 2019, events occurred which he brought to the trial court's attention by his post-trial motions and which compelled different decisions on custody and timesharing. Namely, he alleged that a) Son had been spending alternate weeks at a time with each parent under the Fayette County Model Guidelines over the summer and was thriving under this more equal, consistent

schedule; b) Jennings had interfered with Nelson's attempts to be involved in decisions about Son's MPW benefits; and c) Son's doctor had recently recommended that Son receive speech, occupational, and behavioral therapy.

Jennings contends that none of these issues raised by Nelson merits a new trial. She argues that Son's spending alternating weeks with each parent in the summer was not new information. As the trial court ordered utilization of the Fayette County Model Guidelines for holidays at Nelson's request in its temporary custody order a few months before the May 2019 custody hearing, the trial court and Nelson should have been aware of the summer schedule and that would not be new information that could not have been discovered before trial.

Despite Nelson's arguments that Jennings would not cooperate with him about hiring caregivers for Son under the MPW program, Jennings asserts the parties ultimately agreed to use Learning Lightbulb to provide services under the MPW program. She notes that the trial court's final order provided for a third-party service provider to review MPW timesheets and that the third-party service provider be selected by the parties or the Commonwealth of Kentucky. She argues: "If the parties were unable to agree on a provider, they could have brought that issue to the court by way of motion, not a new trial."

Responding to Nelson's allegation that Son's doctor recommended that Son receive speech, occupational, and behavioral therapy, she notes that the

parties share joint custody of Son so that they can together determine whether Son should receive therapy and what kind. If the parties cannot agree about therapy for Son, she submits that this could be addressed by motion and would not necessitate a new trial.

Responding to Jennings' arguments in his reply brief, Nelson asserts that the parties did not know how Son would react to the different summer schedule beforehand, and that the parties' inability to agree on the third-party service provider should have been taken into consideration. He contends that these factors compel a different result, so the trial court should have considered the new information or granted him a new trial.

Regardless of the exact basis or theory of Nelson's appellate argument for further relief based on this new information, we discern no reversible error in the trial court's not granting him relief (whether reopening proof to alter its judgment or a new trial) under CR 59.01 or CR 59.07. A trial court's ruling on a motion for relief under CR 59.07 is reviewed for abuse of discretion. *Walsh v. Kennedy*, 463 S.W.2d 318, 321 (Ky. 1971). Similarly, a trial court's ruling on a motion for new trial based on grounds of newly discovered evidence under CR 59.01(g) is reviewed for abuse of discretion. *Glidewell v. Glidewell*, 859 S.W.2d 675, 677 (Ky. App. 1993). And a trial court's ruling on a motion for new trial based on CR 59.01(f) grounds (verdict not supported by sufficient evidence or

-29-

contrary to law)[10] is also reviewed for abuse of discretion. *Embry v. Turner*, 185 S.W.3d 209, 213-14 (Ky. App. 2006).

Based on our review of the record and briefs, the trial court did not abuse its discretion in not granting a new trial or in not reopening the proof to alter its judgment in this case. We agree with Jennings that the trial court does not need to conduct a new trial or alter its judgment considering the allegations of the parties' conflicts about selecting service providers or making choices about therapy for Son. If the parties cannot come to an agreement about these custodial decisions, they may seek appropriate relief by filing motions with the trial court. As for the allegation that Son is thriving while alternating weeks with each parent during the summer, this suggests that using the Fayette County Model Guidelines for holidays (especially summer break) worked out well here. But this does not reasonably compel a conclusion that the trial court's timesharing provisions for other times (particularly when Son is in school) are erroneous and need to be amended.

The trial court carefully considered factors such as each party's work schedule and Son's need for consistency in designing a timesharing schedule

---

[10] CR 59.01(f) seems least applicable of the grounds for a new trial asserted by Nelson since it refers to errors in verdicts, and verdicts normally refer to jury decisions rather than decisions by judges. Nonetheless, we cite authority about the standard of review for rulings on motions for new trial on CR 59.01(f) grounds to make the point that abuse of discretion is clearly the applicable standard of review for the trial court's ruling on the motion for new trial here.

around parental availability to be with Son at the beginning and end of Son's school day. Thus, there was no abuse of discretion in not conducting a new trial or altering timesharing based on allegations that Son benefitted from a different schedule during the summertime.

## **CONCLUSION**

For the foregoing reasons, the judgment of the Franklin Circuit Court, Family Court Division, is affirmed.

ALL CONCUR.


BRIEFS FOR APPELLANT:

Raven N. Turner
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Max H. Comley
Frankfort, Kentucky