RENDERED: DECEMBER 9, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-1325-MR

CASSIE ANN STOWERS             APPELLANT

v.         APPEAL FROM GRANT CIRCUIT COURT
HONORABLE R. LESLIE KNIGHT, JUDGE
ACTION NO. 21-CI-00070

COLE WAYNE STOWERS           APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: COMBS, McNEILL, AND K. THOMPSON, JUDGES.

McNEILL, JUDGE: Cassie Ann Stowers ("Cassie") appeals from the Grant Circuit Court's order, adopting the recommendations of the domestic relations commissioner ("DRC") granting Cole Wayne Stowers ("Cole") primary custody of the parties' minor child and finding the existence of an oral lease between the parties and Cole's parents. Finding no error, we affirm.

Cassie and Cole were married in March 2016 and have one child ("C.S.") together. During the marriage, they lived in a home owned by Cole's parents. The parties separated in October 2020 and Cassie moved 130 miles away. Cole filed for divorce and a hearing was held before the DRC on the limited issues of custody and whether an oral lease existed between the parties and Cole's parents.

At the hearing, Cole sought primary custody, concerned about C.S. residing with Cassie due to her paramour, Frederick Elder's, criminal record, and her autistic child's[1] ("M.E.") potential for violence. Elder was convicted of domestic violence against Cassie in 2015 and is currently on diversion for drug charges and receiving stolen property. Further, Cassie agreed that M.E. was aggressive and had caused injuries to C.S. in the past.

Cole believed it was in C.S.'s best interest to reside primarily with him. Cole currently lives in the furnished basement of his parents' home. The basement has a finished bedroom, a full bathroom, living area, and a spare room that could be converted into a bedroom for C.S. Cole testified that his work hours were flexible, and he could arrange to work while C.S. was at school. Also, Cole's parents are available and willing to help care for C.S. Cole's step-father is a schoolteacher and is available in the evenings and summer, while his mother is a

---

[1] This child is the product of a previous relationship between Cassie and Elder.

manager at a convenience store and sets her own schedule. Both grandparents testified to having a good relationship with C.S.

Cole stated that during the marriage the couple had an agreement to rent his parents' second home for $740 a month and that they owed around $5,300 in back rent. Cole's step-father corroborated this agreement, but conceded it was never in writing. He also acknowledged the delinquency but did not know the amount.

Cassie challenged much of this testimony and offered her own evidence of why it was in C.S.'s best interest to reside primarily with her. In regards to Elder's criminal record, she downplayed the severity of the domestic violence conviction and claimed primary responsibility for the incident. She also alleged that Elder had turned his life around and was not currently using drugs.[2] As to M.E.'s risk to C.S., Cassie responded that there had been no recent incidents and that M.E. was in behavioral therapy and had a close bond with C.S.

Cassie testified that she was familiar with the school C.S. would be attending and has a good relationship with the teachers. She currently lives with Elder in a three bedroom home with a separate bedroom for the boys to share and a yard to play in. She plans on staying at home with the children but also has

---

[2] Apparently, another witness, either Elder's or Cassie's aunt (the record is unclear), also vouched for Elder's character and sobriety. However, this testimony was omitted from the recording of the hearing that is in the appellate record.

support from family close by. Cassie offered no real evidence disputing the existence of the oral lease. In fact, she tacitly acknowledged such by insisting that it was Cole, not she, who personally paid the rent.

Following the evidence, the DRC entered its recommendations, finding it was in C.S.'s best interest to reside primarily with Cole. It also found an oral lease existed between the parties and Cole's parents and ordered each party to pay one half of the debt. Cassie filed exceptions to the DRC's recommendations, which were overruled by the trial court, who adopted the DRC's order. This appeal followed.

As an initial matter, we must address the deficiency of Cassie's appellate brief. Her argument section fails to make "reference to the record showing whether the issue was properly preserved for review and, if so, in what manner" as required by CR[3] 76.12(4)(c)(v). We require a statement of preservation:

> so that we, the reviewing Court, can be confident the issue was properly presented to the trial court and therefore, is appropriate for our consideration. It also has a bearing on whether we employ the recognized standard of review, or in the case of an unpreserved error, whether palpable error review is being requested and may be granted.

*Oakley v. Oakley*, 391 S.W.3d 377, 380 (Ky. App. 2012).

---

[3] Kentucky Rules of Civil Procedure.

"Our options when an appellate advocate fails to abide by the rules are: (1) to ignore the deficiency and proceed with the review; (2) to strike the brief or its offending portions, CR 76.12(8)(a); or (3) to review the issues raised in the brief for manifest injustice only[.]" *Hallis v. Hallis*, 328 S.W.3d 694, 696 (Ky. App. 2010) (citing *Elwell v. Stone*, 799 S.W.2d 46, 47 (Ky. App. 1990)). Because the record is small, and we have been able to determine whether her arguments were properly preserved, we will ignore the deficiency and proceed with the review.

Cassie first argues the DRC failed to consider the factors in KRS[4] 403.270(2) in awarding custody and its finding that awarding primary custody to Cole was in C.S.'s best interest was not supported by substantial evidence. Specifically, the DRC's order does not indicate what evidence it relied upon in making its decision and improperly disregarded evidence in her favor. Cassie preserved these arguments in her objections to the DRC's recommendations.

> In reviewing a child-custody award, the appellate standard of review includes a determination of whether the factual findings of the family court are clearly erroneous. A finding of fact is clearly erroneous if it is not supported by substantial evidence, which is evidence sufficient to induce conviction in the mind of a reasonable person. Since the family court is in the best position to evaluate the testimony and to weigh the evidence, an appellate court should not substitute its own opinion for that of the family court. If the findings of

---

[4] Kentucky Revised Statutes.

fact are supported by substantial evidence and if the
correct law is applied, a family court's ultimate decision
regarding custody will not be disturbed, absent an abuse
of discretion. Abuse of discretion implies that the family
court's decision is unreasonable or unfair.

*B.C. v. B.T.*, 182 S.W.3d 213, 219 (Ky. App. 2005) (citations omitted).

In determining custody of a child, KRS 403.270 requires the court to

determine the best interest of the child. In doing so, the statute directs the court to

consider all relevant factors, including but not limited to:

> (a) The wishes of the child's parent or parents, and any
> de facto custodian, as to his or her custody;
>
> (b) The wishes of the child as to his or her custodian,
> with due consideration given to the influence a parent or
> de facto custodian may have over the child's wishes;
>
> (c) The interaction and interrelationship of the child with
> his or her parent or parents, his or her siblings, and any
> other person who may significantly affect the child's best
> interests;
>
> (d) The motivation of the adults participating in the
> custody proceeding;
>
> (e) The child's adjustment and continuing proximity to
> his or her home, school, and community;
>
> (f) The mental and physical health of all individuals
> involved;
>
> (g) A finding by the court that domestic violence and
> abuse, as defined in KRS 403.720, has been committed
> by one (1) of the parties against a child of the parties or
> against another party. The court shall determine the
> extent to which the domestic violence and abuse has

affected the child and the child's relationship to each party, with due consideration given to efforts made by a party toward the completion of any domestic violence treatment, counseling, or program;

(h) The extent to which the child has been cared for, nurtured, and supported by any de facto custodian;

(i) The intent of the parent or parents in placing the child with a de facto custodian;

(j) The circumstances under which the child was placed or allowed to remain in the custody of a de facto custodian, including whether the parent now seeking custody was previously prevented from doing so as a result of domestic violence as defined in KRS 403.720 and whether the child was placed with a de facto custodian to allow the parent now seeking custody to seek employment, work, or attend school; and

(k) The likelihood a party will allow the child frequent, meaningful, and continuing contact with the other parent or de facto custodian, except that the court shall not consider this likelihood if there is a finding that the other parent or de facto custodian engaged in domestic violence and abuse, as defined in KRS 403.720, against the party or a child and that a continuing relationship with the other parent will endanger the health or safety of either that party or the child.

KRS 403.270(2).

We are convinced the DRC's order reflects an adequate consideration of the statutory best interest factors and appropriately sets forth which evidence it relied upon in making its custody determination. While the order may not have specifically referenced KRS 403.270(2), it contained lengthy findings of fact

impliedly pertaining to the statutory factors. For instance, the DRC found that Cole's mother and step-father had "a strong and healthy relationship with their . . . grandson[,]" and that C.S.'s half-brother, M.E., "is sometimes aggressive and has caused minor injuries [to C.S.,]" relating to KRS 403.270(2)(c), "[t]he interaction and interrelationship of the child with his or her parent or parents, his or her siblings, and any other person who may significantly affect the child's best interests[.]" It also acknowledged Elder's recent criminal history and drug use, relevant to the same factor. It further noted Cole's desire that C.S. reside primarily with him and his concern that C.S. would be unsafe residing with M.E., corresponding to KRS 403.270(2)(a), "[t]he wishes of the child's parent or parents[.]"

Cassie points to three factors which, she argues, the DRC's order failed to consider or misconstrued: (c) the interaction and interrelationship of the child with his or her parent or parents, his or her siblings, and any other person who may significantly affect the child's best interests; (e) the child's adjustment and continuing proximity to his or her home, school, and community; and (g) domestic violence. Essentially, she disagrees with the DRC's interpretation of the evidence and weighing of the relevant factors. As noted above, the DRC made findings concerning KRS 403.270(2)(c), albeit in Cole's favor. While Cassie disputes these findings and offers similar evidence favorable to her, "the [DRC] is

in the best position to evaluate the testimony and to weigh the evidence[.]" *B.C.*, 182 S.W.3d at 219 (citation omitted).

Similarly, the DRC considered evidence of domestic violence, finding that Cassie was a victim of domestic violence by Elder in 2015. On appeal, Cassie challenges whether this evidence was properly considered under KRS 403.270(2)(g) since, she argues, there was no evidence the domestic violence affected C.S. or his relationship with any party, neither did the DRC consider that she and Elder had participated in couples counseling. However, these arguments are not preserved for review as it does not appear Cassie made them to the trial court. Therefore, we decline to address them.

Cassie's only objection on this issue was that the DRC's finding that the domestic violence caused "significant injury" was not supported by substantial evidence. We disagree. Cole testified that, according to Cassie, Elder choked her and hit her, and that she had stitches from him throwing something at her. While Cassie testified the only injury she received was bruises on her arms, "[q]uestions as to the weight and credibility of a witness are purely within the province of the court acting as fact-finder[.]" *Truman v. Lillard*, 404 S.W.3d 863, 868 (Ky. App. 2012).

As to whether the DRC properly considered KRS 403.270(2)(e), the child's adjustment and continuing proximity to his or her home, school, and

community, Cassie simply argues "[t]here is overwhelming evidence that C.S. is well adjusted to the community in which he and his mother lived." She notes her good relationship with the school, that she has joined a church and C.S. has attended with her, and that she has signed him up for swimming lessons. However, this evidence speaks more to her adjustment to the community than C.S.'s. There was no evidence C.S. had a good relationship with the school, church, or that he had even attended swimming lessons (Cassie merely testified she had signed him up). Again, Cassie is simply disagreeing with the weight that should be afforded this evidence. However, "[w]hen reviewing the propriety of a custody award, the test is not whether some other court may have reached a different decision, but rather, whether the circuit court abused its discretion." *Gertler v. Gertler*, 303 S.W.3d 131, 137 (Ky. App. 2010) (citing *Cherry v. Cherry*, 634 S.W.2d 423, 425 (Ky. 1982)). Upon review of the record, we cannot say the DRC abused its discretion.

Cassie also argues the DRC erred in finding an oral lease agreement between the parties and Cole's parents because the agreement violates the statute of frauds. This argument was never made to the DRC or trial court; therefore, it is not preserved for our review, and we will not address it.

Based upon the foregoing, the judgment of the Grant Circuit Court is affirmed.

COMBS, JUDGE, CONCURS.

THOMPSON, K., JUDGE, CONCURS IN RESULT ONLY.

BRIEFS FOR APPELLANT:

Louis W. Rom
Lexington, Kentucky

BRIEF FOR APPELLEE:

William R. Adkins
Williamstown, Kentucky